## THE ATTORNEY GENERAL v. LEVI S. RICE.[1]

*Statutes—Title of act—Introduction of bill by title—Substitute— Legislative journals—Constitutionality of proceedings— Organization of township by board of supervisors.*

1. If the *object* of an act of the Legislature is *fully* expressed in its title as *passed*, the *form* or *status* of such *title* during any of the preceding stages of legislation is immaterial.

2. The title to a bill is usually adopted after its passage, and is not an essential part of it, although it is of the law resulting from its introduction.

3. The object of Art. 4, § 28, of the Constitution, providing that no *new* bill shall be introduced after the first fifty days of the session, is "to prevent hasty and improvident legislation, and to compel, so far as any previous law can accomplish that result, the careful examination of proposed laws, or, at least, the affording of opportunity for that purpose." Cooley, Const. Lim. 139. Another purpose is, no doubt, to give the people of the State, or of any locality therein, an opportunity to be heard upon proposed legislation affecting their interests. The right of *petition* and *protest* has ever been recognized as one of the established privileges of the people of a free country.

4. Every reasonable intendment is to be made in favor of the proceedings of the Legislature, and it is not to be presumed that they have violated the provisions of the Constitution; and when nothing appears to the contrary in the legislative journals, it is to be considered that all the constitutional requirements have been complied with in the passage of an act.
So *held*, where the Senate journal *positively* stated that a bill

[1] See *People ex rel. Hart v. McElroy*, 40 N. W. Rep. 750, for a discussion of questions involved in this case.

| 64 | 385 |
| 72 | 449 |
| 72 | 451 |
| 64 | 385 |
| 76 | 278 |
| 76 | 281 |
| 64 | 385 |
| 79 | 65 |
| 64 | 385 |
| 80 | 608 |
| 64 | 385 |
| 83 | 18 |
| 64 | 385 |
| 89 | 579 |
| 89 | 613 |
| 64 | 385 |
| 91 | 85 |
| 91 | 133 |
| 64 | 385 |
| 97 | 592 |
| 64 | 385 |
| 99 | 93 |
| 64 | 385 |
| 101 | 471 |
| 64 | 385 |
| 118 | 599 |
| 64 | 385 |
| 123 | 701 |
| 64 | 385 |
| 128 | 383 |
| 128 | 386 |
| h128 | 388 |
| j128 | 404 |
| j128 | 406 |
| j128 | 409 |
| j128 | 411 |
| 64 | 385 |
| 135 | 5565 |
| e135 | 4567 |
| 64 | 385 |
| 141 | 1442 |
| 64 | 385 |
| 143 | 0349 |
| 64 | 385 |
| 150 | 1455 |
| 64 | 385 |
| 158 | 6 74 |

was introduced to organize a *specified* township, when in fact the *title* simply was so introduced, and afterwards a *bill* was substituted to organize a *different* township.

5. It is competent for the Legislature to amend a bill by enlarging or diminishing the bounds of the territory included therein. *Pack v. Barton,* 47 Mich. 520.

6. The House and Senate journals, kept pursuant to Art. 4, § 10, of the Constitution, duly certified by the proper officers, are *conclusive* evidence of the proceedings of those bodies, and cannot be contradicted by *parol* testimony.

7. Courts take judicial knowledge of the legislative journals, and do not allow parties to stipulate or agree, or admit by pleading, that a statute was not properly or constitutionally passed by the Legislature. If the Constitution has not been complied with in the passage of an act, *that* fact must be shown by the printed journals, or the certificate of the Secretary of State, the custodian of legislative proceedings. *Happel v. Brethauer,* 70 Ill. 166 ; *Miller v. State,* 3 Ohio St. 475.

8. A board of supervisors assumed to organize two townships out of the territory of an *existing* township, none of the freeholders of *which* joined in the petition required by How. Stat. § 486.

　*Held,* that such action could not affect said township, which had been organized by legislative enactment.

Information to determine the right of respondent to hold the office of supervisor. Heard November 12, 1886. Judgment for respondent, January 20, 1887. The facts are stated in the opinion.

*Moses Taggart,* Attorney General ( *Olds & Robson,* of counsel), for relator.

*L. D. Johnson,* for respondent.

MORSE, J. The Attorney General files an information in this case to determine the right of the respondent to hold the office of supervisor of the township of Ironwood in the county of Ontonagon.

The Legislature of 1885, by Act No. 382 (local acts), organized certain territory in Ontonagon county into a township, to be called Ironwood.

At an election held pursuant to the provisions of said act,

on the sixth day of July, 1885, the respondent was elected supervisor of said township, and duly qualified, and entered upon the duties of his office. No election was held in said township in the spring of 1886, and the respondent claims to hold over under the statute[1] until his successor has been duly elected and qualified, in manner and form as provided by the statute.

The organization of this township is attacked on the ground that no bill was legally introduced or enacted as a statute creating the township of Ironwood.

The replication of the Attorney General to the plea of the respondent shows that no bill for the organization of the township of Ironwood was ever introduced into the Legislature, but, before the expiration of the constitutional limit of 50 days in which to introduce bills, Senator Stephenson introduced a skeleton bill, under the title of " An act to organize the township of Au Train;" that said skeleton bill was no bill at all, and simply consisted of the title as above given, indorsed on a blank sheet of paper; that said township of Au Train was to be located in Alger county.

After the expiration of said 50 days, and on June 3, 1885, the chairman of the Senate committee on towns and counties reported, as a substitute for the skeleton bill so introduced by Senator Stephenson, a bill to organize the township of Ironwood in the county of Ontonagon, and on the same day the rules of the Senate were suspended, and said bill, as a manuscript bill, was passed by the Senate. Subsequently it passed the House, and was approved by the Governor, June 9, 1885.

The replication was demurred to by respondent.

The Attorney General contends that the Constitution (Art. 4, § 20) was violated in its spirit, because the title of the

[1] How. Stat. § 685, provides that all officers elected at the annual township meeting, except justices of the peace and school inspectors, shall hold their offices for one year, and until their successors shall be elected and duly qualified.

bill as introduced did not express the object of the act as passed. We cannot extend the provisions of the Constitution beyond its express terms in this respect. If the object of the act as passed is fully expressed in its title, the form or *status* of such title at its introduction, or during any of the stages of legislation before it becomes a law, is immaterial. To hold otherwise would, in many cases, prevent any alteration or amendment of a bill after its introduction, as, in legislative practice, it frequently becomes necessary to amend the title as introduced in order to conform to changes in the bill. The title to a bill is usually adopted after it has passed the House, and is not an essential part of the bill, although it is of a law. *Larrison v. Peoria, A. & D. R. R. Co.*, 77 Ill. 17.

The showing of the replication, however, if we can consider the facts therein gathered by parol, and not found in the legislative records, involves a plain violation of the Constitution in another respect. No bill was introduced, but a title was handed up to pass as a bill until convenience or some future interest might enable the member introducing it to ingraft upon it any legislation he might desire.

The object of the Constitution, in providing that no new bill shall be introduced after the first 50 days of the session (Art. 4, § 28) is—

"To prevent hasty and improvident legislation, and to compel, so far as any previous law can accomplish that result, the careful examination of proposed laws, or, at least, the affording of opportunity for that purpose." Cooley, Const. Lim. 139.

Another purpose was, no doubt, to give the people of the State, or of any locality in the State, an opportunity to be heard upon proposed legislation affecting their interests. The legislative journals, referring as they do to the titles of all bills introduced, give some warning to the people of the measures introduced. The right of petition and protest has ever been recognized as one of the established privileges of the people in a free country; and they have a right to notice

of proposed legislation, and an opportunity to express their assent or dissent. If there was no constitutional inhibition against such practice, bills might be introduced upon the last days of the session, and rushed at once through both houses, without any chance for the people to be heard before their passage, or to rectify the action until another biennial session of the Legislature. The title of the bill in question as introduced gave no notice to the inhabitants of the territory embraced within the limits of this township of Ironwood as organized by this act. And if any person suspecting anything of the kind had investigated the matter, before the expiration of the 50 days, he would have found nothing but a title, which, without any bill attached thereto, would have conveyed to him no intimation of the act as passed. He would also have been justified, under the provisions of the Constitution, in believing that the title could not be used for any purpose.

While the questionable practice of so amending bills, after the expiration of the 50-day limit, as to make the act passed entirely different from and foreign to the bill introduced,— in fact a new bill,—has obtained to a great extent in our legislative practice, it is to be hoped that the introducing of mere titles, without any body, is seldom resorted to. If it can be successfully maintained, the safeguard of the Constitution will be completely broken down, and its provisions nullified.

But it is contended by the counsel for respondent that the proceedings of the Senate, as set forth in its journal, do not show that this was a skeleton bill, as the bills introduced are not printed in such journal, or preserved, and that this fact is ascertained by parol; that the presumption is always in favor of the legality of legislative proceedings, and, where the record does not show the contrary, the proceedings are conclusively presumed to have been in accordance with the constitutional requirements.

The legislative journals show that on the sixteenth day of February, 1885, a bill was introduced "to organize the township of Au Train," which was read a first and second time by its title, and referred to the committee on counties and townships. The first day of the session was January 7, 1885. June 3, 1885, this committee reported, as a substitute for this bill, a bill to organize the township of Ironwood, county of Ontonagon. The substitute was concurred in, the rules suspended, and the same read a third time and passed, yeas 25, nays 0. Senate Journal, p. 1120. It was transmitted to the House on the same day, and there read the first and second time by its title, and referred to the committee on towns and counties. House Journal, p. 1604. It was reported back to the House by the committee, and June 5, 1885, the rules were suspended, the bill read a third time, and passed. It was also given immediate effect. House Journal, pp. 1652, 1657, 1658. It was approved by the Governor, and became a law, June 9, 1885.

Every reasonable intendment is to be made in favor of the proceedings of the Legislature. It is not to be presumed that they have violated the provisions of the Constitution, either purposely or through carelessness or inadvertence. When nothing appears to the contrary in the legislative journals, it is to be considered that all the constitutional requirements have been complied with in the passage of an act. The journal of the Senate positively states that a bill was introduced to organize the township of Au Train. If such a bill was introduced, it would be presumed that the bill substituted, to organize the township of Ironwood, had in view the same general purpose as the first bill,—to give to the inhabitants of the territory described a distinct municipal government. And no one would deny the competency of the Legislature to amend a bill by enlarging or diminishing the bounds of the territory included in such bill. *Pack v. Barton,* 47 Mich. 520.

The question then arises, can it be shown by parol, in contradiction of the legislative journal, that in fact a "skeleton bill, or no bill at all, was introduced?" The Constitution (Art. 4, § 10) provides that—

"Each house shall keep a journal of its proceedings, and publish the same, except such parts as may require secrecy."

Are these journals kept by the clerks of each house, and read and corrected each day by each body, and duly certified by the proper officers to be correct, to stand as conclusive evidence of their proceedings, or are they liable to be disputed and overthrown by parol testimony, either of individual officers and members, or of strangers, who may be interested in nullifying legislative action? It would seem that there can be but one answer. The legislative record must prevail. Any other ruling would necessarily lead to dangerous and alarming results.

"The testimony of an individual could not be received to contradict a statute, and, if not, why receive it to contradict an entry upon the journal?" *State v. Moffitt,* 5 Ohio, 363; *Miller v. State,* 3 Ohio St. 475, 484.

It is claimed by the Attorney General that it is admitted on the pleadings that no bill was ever introduced, but that the title indorsed upon a piece of blank paper was put in. Courts do not allow parties to stipulate or agree, or admit by pleading, that a statute was not properly or constitutionally passed by the Legislature. If the Constitution has not been complied with in the passage of an act, that fact must be shown by the printed journals, or the certificate of the Secretary of State, the custodian of legislative proceedings. Such fact cannot rest in parol. *Happel v. Brethauer,* 70 Ill. 166; *Miller v. State,* 3 Ohio St. 475. And unless the journal shows affirmatively that the constitutional directions were not complied with, it must be presumed that they were followed. *Schuyler Co. v. People,* 25 Ill. 181.

Courts are authorized to take judicial knowledge of the legislative journals.

The journals in this case show that the bill was read the first and second time in both houses by its title only. The Attorney General contends that this action was in violation of article 4, § 19 of the Constitution, which provides that—

"Every bill and joint resolution shall be read three times in each house before the final passage thereof."

It is a sufficient answer to this objection that the same is not set out or raised in the pleadings. We do not care to go outside of the record to hunt for flaws in the legislative journal upon the passage of this bill, if any exist.

It appears that the board of supervisors of Ontonagon county, since the passage of this act, have undertaken to form two townships, Bessemer and Ironwood, the territory of which townships, so organized by the supervisors, embraces the territory contained in the township of Ironwood as organized by the Legislature. The petition, however, upon which the supervisors acted in organizing such townships, was signed by persons representing themselves as citizens and freeholders of the townships of Carp Lake and Ontonagon. Such action cannot stand in the way of the legislative organization. No freeholders of the township of Ironwood joined in the petition, as shown upon its face. How. Stat. § 486.

Judgment must be rendered in favor of the respondent, sustaining his demurrer, and declaring him entitled to the office.

The other Justices concurred.