The People, ex rel. Frank M. Hart, v. Frank McElroy et al.

*Constitutional law—Legislative journals—Report of substitute after expiration of fifty-day limit—Reading bill by title.*

1. It was held in *Attorney General v. Rice*, 64 Mich. 385, that parties could not stipulate or agree, or admit by pleading, that a statute was not properly or constitutionally passed by the Legislature, nor could parol proof be used for that purpose.

2. Without determining how far the legislative journals may be used to impeach duly authenticated acts of the Legislature, the courts certainly ought to have the right to open said journals to ascertain whether the fraud or mistake of some clerk or employé of the Legislature, or its committees, has not imposed upon the statute-books a different law from the one actually passed, or to determine whether the requisite number of votes were given under the Constitution to pass a law, when that instrument requires that the ayes and noes shall be entered upon the journals.

3. If the *object* of an act of the Legislature is fully expressed in its title as *passed*, the form or *status* of the title during any of the preceding stages of legislation is immaterial.

4. A substitute cannot be considered a new bill.  Art. 4, § 28, Const.

5. The legislative practice of reading a bill twice by its title, and oi●y once at length, has been maintained too long in this State to be now overthrown by the courts.

Error to St. Clair. (Canfield, J.) Argued June 14, 1888. Decided November 28, 1888.

Information to test the validity of the act incorporating Marine City. Respondents bring error. Reversed, and judgment entered for respondents. The facts are stated in the opinion.

*B. C. Farrand,* Prosecuting Attorney (*Avery Brothers,* of counsel), for relator.

*Atkinson, Vance & Wolcott,* for respondents.

[The points of counsel are stated in the opinion.—Reporter.]

Morse, J. The prosecuting attorney for the county of St. Clair filed an information in the circuit court for that county to test the validity of Act No. 500 of the Local Laws of 1887, purporting to incorporate the city of Marine City, in said county.

The defendants are officers of said city, elected and holding public offices by virtue of said act.

The act is claimed to be void because it was not introduced in the Legislature until after the expiration of 50 days, and was not read but once in the lower house of the Legislature, and was not read three times, as the Constitution requires.

The replication to the plea of the respondents sets forth that the session of the Legislature of 1887 began on January 5; that on February 18 a bill, denominated "House Bill No. 491," entitled—

"A bill detaching certain lands from the township of Ft. Gratiot, in the county of St. Clair, and organizing the same into a new township, to be known as the township of 'Huronia,'"—

Was introduced by Representative Wellman, and referred

to the committee on towns and counties. The bill was discharged from this committee, May 26, and referred to the committee on municipal corporations, May 27. This last committee reported a substitute for said bill, which substitute was entitled—

"A bill to incorporate the city of Marine City, in the county of St. Clair, and to repeal Act No. 328 of Local Acts of 1885, entitled 'An act to re-incorporate the village of Marine City,' approved April 23, 1885."

The substitute was at once placed on the general order, and on June 3 discharged from such order, and under a suspension of the rules passed, and ordered to take immediate effect. On the same day it was sent to the Senate, and there passed, after but one reading, under a suspension of the rules, and the order for immediate effect concurred in. It was returned to the House, and on June 7 referred to the committee on engrossment and enrollment. Being duly enrolled, it received the signature of the Governor, June 8, 1887.

It is claimed under these circumstances, in said replication, that the bill as passed was not introduced in either house of the Legislature until May 27, 1887, when it appeared as a substitute in the report of the committee on municipal corporations; that the substitute was in no way germane to the subject-matter of said house bill 491, as introduced in the first place, and that the territory embraced within the township of Fort Gratiot does not include any of the territory incorporated in Marine City by the substitute.

After the filing of this replication, the respondents obtained leave to file an amended plea and answer, and did so. In this amended answer they set forth the act under which the city was organized, and averred its proper and correct passage by the Legislature according to law, showing the certificate of the proper officers that

it passed both houses, and was ordered to take immediate effect; also the approval of the Governor, and the certificate of the Secretary of State that it had become a law. It also appears upon the statute-books as one of the local acts of 1887. See Local Acts of 1887, p. 665.

To this amended plea and answer the prosecuting attorney replied that—

"Act No. 500 of the Laws of 1887 is not, and never has been, of any validity or force, and is now and always has been, void and of no effect, because the same was not introduced into or brought before the said Legislature until after the expiration of more than fifty days from and after the commencement of said session, and because the same was only read once in the lower house of said Legislature, and was not read therein three times, as the. Constitution of this State requires,"—

And set forth the same, with other matters not necessary here to be mentioned, as causes of demurrer to said plea and answer. The respondents joined in said demurrer, and prayed the quashing of said information

Upon the hearing, the journals of the two houses were used, and it was shown therefrom the state of facts set forth in the replication, except that the bill, before it was referred to a committee, was read twice by its title, and the substitute once at length before its passage, in the House, and also that the bill, in the shape of the substitute, was read twice by its title, and once at length, in the Senate before its passage.

We held, in *Attorney General v. Rice*, 64 Mich. 385 (31 N. W. Rep. 203), that parties could not stipulate or agree, or admit by pleading, that a statute was not properly or constitutionally passed by the Legislature, and that no parol proof could be used for that purpose. In that case we took judicial knowledge of the contents of,

72 MICH.—29.

the legislative journals, and found no flaw in the passage of the act then under consideration.

But it is held by reputable authority, and with some show of reason, that courts cannot look beyond the enrolled act to ascertain whether the Constitution has been complied with in its passage. If the act, as in this case, is authenticated by the signature of the presiding officers of both houses, approved by the Governor, and certified in the published laws by the Secretary of State, it is declared by the courts of last resort in many of the states that the court will not go behind these certificates, and search further to ascertain whether such facts existed as gave these officers constitutional warrant for their action. *State v. Swift*, 10 Nev. 176; *Evans v. Browne*, 30 Ind. 514; *Sherman v. Story*, 30 Cal. 256; *Bender v. State*, 53 Ind. 254; *Pangborn v. Young*, 32 N. J. Law, 41; *Duncombe v. Prindle*, 12 Iowa, 1; *Eld v. Gorham*, 20 Conn. 8; *Railroad Co. v. Governor*, 23 Mo. 353; *People v. Devlin*, 33 N. Y. 269.

The courts of some of the states have taken cognizance of the journals, and looked into them, for the purpose of determining whether the constitutional methods have been followed in the passage of laws. But it is held, in all the cases, that the presumption is always strong that the legislature has not violated the constitution in the passage of an act, duly authenticated, as stated above; and that the proof furnished by the journals must be clear, in order to overcome this presumption. *State v. Peterson*, 38 Minn. 143 (36 N. W. Rep. 443); *Miller v. State*, 3 Ohio St. 475; *Williams v. State*, 6 Lea, 549; *Supervisors v. People*, 25 Ill. 183; *Larrison v. Railroad Co.*, 77 Id. 11; *Worthen v. Badgett*, 32 Ark. 496.

It would seem that in this State the practice of this Court has been to look into the legislative journals, and

to go behind the authentication of the act, to ascertain whether the provisions of the Constitution have been complied with in the procedure to its passage. In *Green v. Graves*, the Court evidently did this, and decided "an act to organize and regulate banking associations" to be unconstitutional, because it did not receive the assent of two-thirds of the members of each house. See 1 Doug. 351.

In *People v. Supervisor*, 16 Mich. 254, the Court examined the journals, and ascertained that the title of the act, as engrossed and signed by the Governor, differed from the title of the bill as passed. CAMPBELL, J., in his opinion, says:

"We have certainly the right to look behind the enrollment of a statute for some purposes, in order to determine whether it passed the Legislature under the conditions required by the Constitution; as, for example, to ascertain what the vote was upon it;" citing *Green v. Graves, supra.*

And in *Attorney General v. Rice*, 64 Mich. 385, this Court again examined the journals. But in none of these cases does it appear that the right to do so was questioned upon the argument. I am of the opinion that the right of the courts to look into the journals for certain purposes, and especially in such cases as *Green v. Graves*, and *People v. Supervisor*, should be sustained, rather than to hold that the enrollment and authentication of the act, as enrolled by the proper officers, is conclusive.

The courts certainly ought to have the right to open the journals of the Legislature to ascertain whether the fraud or mistake of some clerk or employé of the Legislature, or its committees, has not imposed upon the statute-books a different law from the one actually passed by the Legislature, or to determine whether the requisite number of votes have been given under the Constitution to pass a law, when the Constitution requires that the

ayes and noes shall be entered upon such journals. It must have been intended by the framers of that instrument, by such requirement, that the courts should look into the journals to determine whether the ayes were sufficient to pass a bill in either house as recorded in the journals. How far the journals may be examined, to impeach duly authenticated acts of the Legislature, it is not necessary here to determine. We certainly cannot act upon anything not found in the journals, nor can we presume that any requirement of the Constitution has not been fulfilled, unless the fact appears affirmatively in such journals; and every intendment is to be made in favor of the constitutionality of the passage of the act.

We held in *Attorney General v. Rice, supra,* that, if the object of the act as passed is fully expressed in its title, the form or *status* of such title, at its introduction, or during any of the stages of legislation, before it becomes a law, is immaterial. In the present case, therefore, the act is not unconstitutional, because the title of the bill as introduced differed from the title of the substitute, or the act as passed. The body of this bill, as introduced by Mr. Wellman, does not appear in the house journal, nor does the Constitution require that it should. We have no right to presume that the body of the substitute was not germane to the body of the bill. The title throws some light upon the subject, in both the bill and substitute, and from these titles it would appear that the subject to be legislated upon related to the same matter, to wit, the incorporation of certain territory in the same county of St. Clair into a new political organization or municipality,—the bill, to take territory from the township of Fort Gratiot, in the county of St. Clair, and organizing therefrom a new township, to be called "Huronia;" and the substitute, to incorporate the city of Marine City within the same county. See *Attorney*

*General v. Amos*, 60 Mich. 372, 380 (27 N. W. Rep. 571).

We are not informed by the journal what the description of this particular territory was in the body of the bill as introduced, and we cannot go outside of the journals to ascertain it; nor do we consider that it was necessary that the description of the territory in the bill should have been identical with that of the substitute. The lands and property to be affected in both the bill and substitute evidently, from the titles, being in the same county, we are not prepared to say that even the spirit of the constitutional provision was violated. Certainly there is no affirmative showing from the journals that the letter of the constitutional requirement was not observed. The bill was introduced within the 50-day limit. The substitute cannot be considered a "new bill." Article 4, § 28.

As to the reading of the bill and substitute twice by the titles, and only once at length, it cannot be considered, at this late day, a violation of section 19, Art. 4, of the Constitution, which provides that—

"Every bill and joint resolution shall be read three times in each house before the final passage thereof."

The legislative practice of reading the same twice by title, and only once at length, has been maintained too long in this State to be now overthrown by the courts. It would deprive us of all statutory law. The Constitution, in terms, does not direct that the reading shall be at length, and, while such reading might be the better practice, we cannot hold that it is imperatively required that it should be so read more than once. This act, as it passed, was read once in each house at length, as appears from the journals.

The judgment of the court below must be reversed and vacated.

Judgment will be entered here for the respondents, with costs of both courts against the relator, Frank M. Hart.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred. LONG, J., did not sit.