GEORGE W. SACKRIDER v. THE BOARD OF SUPERVISORS OF SAGINAW COUNTY ET AL.

*Constitutional law—Introduction of bill into Legislature—Report of substitute—Legislative journals—Evidence.*

1. Article 4, section 28, of the Constitution, which provides that "no new bill shall be introduced into either House of the Legislature after the first fifty days of a session shall have expired," is violated by the reporting of a new bill after said fifty days as a substitute for a pending bill introduced within the constitutional period, the subject-matter of which has no connection with the subject-matter of the new bill.

| | |
|---|---|
| 79 | 59 |
| 80 | 609 |
| 79 | 59 |
| 83 | 18 |
| 79 | 59 |
| 89 | 579 |
| 79 | 59 |
| 97 | 592 |
| 79 | 59 |
| 101 | 471 |
| 79 | 59 |
| 118 | 599 |
| 79 | 59 |
| e128 | 387 |
| j128 | 407n |
| j128 | 411 |
| 79 | 59 |
| 135 | 1565 |
| e135 | 1568 |
| 79 | 59 |
| 143 | 3349 |

So *held,* where the original bill provided for the discontinuance of a certain portion of a State road in a specified county, and the substitute provided for the construction and maintenance of stone, gravel, macadamized, and dirt roads in another county, and to raise money by the issuing of bonds for that purpose, the object of each bill being set forth in the title.

2. Testimony of members of the Legislature is inadmissible to show the proceedings in that body, and to prove the contents of the body of a bill as introduced. *Attorney General v. Rice,* 64 Mich. 386 (head-note 6).

3. The following propositions are summarized from the opinion of Mr. Justice MORSE:

*a*—If the constitutional provision limiting the introduction of bills to the first fifty days of the session is in the way of legislation, and the people desire that new bills may be introduced at a later period, there is a constitutional way to remove the inhibition. But it is the duty of the courts until then to see that it is obeyed.

*b*—We have the right, as heretofore held, to examine the journals of the Legislature for certain purposes, and, while the presumption is strong that that body has not violated the Constitution, still, if the proof furnished by the journals is clear that an act was not constitutionally passed, it is the duty of the courts to so declare, and to hold it void. *Green v. Graves,* 1 Doug. 351; *People v. Supervisor,* 16 Mich. 254; *Attorney General v. Rice,* 64 Id. 385; *People v. McElroy,* 72 Id. 446.

*c*—The Court will take judicial notice that territory specifically described and located in the county of Midland does not include any part of the county of Saginaw.

*d*—In *Attorney General v. Rice,* 64 Mich. 385, the change was only in the name of the township to be organized, and the title as introduced and as passed gave no hint but what the territory in the body of the bill was the same, which fact was presumed in favor of constitutional action by the Legislature, which had power to increase or diminish the territory included in the bill by amendment.

*e*—We did not intend by what was said in *People v. McElroy,* 72 Mich. 446, in relation to the form or *status* of the title at the time of the introduction of a bill, or while it was pending, being immaterial, to hold that the language of the title could not be inquired into and used in an investigation of this kind. It is a part of the journals, and can be used to support or rebut a presumption of the correctness of legislative action, and, where the words of a title as introduced are clear and specific, such title becomes of great importance in determining

whether the mandate of the Constitution has been obeyed or its requirements followed in the passage of the act.

Appeal from Saginaw. (Gage, J.) Argued November 8, 1889. Decided December 28, 1889.

Bill to enjoin supervisors from issuing bonds or taking any proceedings under Act No. 341, Local Acts of 1889. Defendants appeal from a decree declaring said act unconstitutional and void. Affirmed. The facts are stated in the opinion.

*Lawson C. Holden* and *Byron A. Snow,* for complainant.

*James H. Davitt* and *F. E. Emerick,* for defendants.

MORSE, J. The Legislature of this State, at its session of 1889, passed an act entitled—

"An act to provide for the construction and maintenance of stone, gravel, macadamized, and dirt roads in the county of Saginaw, and to raise one hundred thousand dollars therefor by issuing bonds." See Local Acts of 1889, No. 341, p. 380.

The act provided that the question of raising this sum of money by issuing the bonds of the county should be submitted to the electors of said county; and, if a majority of the electors of the county voting upon the question should vote in favor of issuing said bonds, the board of supervisors at its next meeting thereafter might issue the same, under the terms and conditions of said act. This act was approved March 21, 1889. The question of raising the loan was submitted to the people at the annual spring election of 1889, and carried,—yeas, 7,906; nays, 3,633; a total vote of 11,539. The total vote for Justice of the Supreme Court at this election in Saginaw county was 10,997.

The complainant, a large land-owner and heavy taxpayer in said county, residing in the city of Saginaw, filed

his bill of complaint in this case, praying for a perpetual injunction against the board of supervisors, and Green and King, who are, respectively, chairman and clerk of said board, to restrain and enjoin them from taking any steps or doing any act looking towards the issuing of bonds, or from taking any proceedings under said act. He alleges in said bill that this act is void, and not a law of this State, because it was not introduced or offered in the Legislature within the first 50 days of the session; that it was a substitute for a bill known, as "House Bill No. 214," entitled—

"A bill to discontinue that portion of the Midland & St. Clair State Road in the township of Midland, Midland county, Michigan, from the point where it now commences, at a point near the center of section 28, in said township, to where it intersects the section line between sections 27 and 34, in said township,"—

And not reported or given to said Legislature under and by any other than that title within the first 60 days of the session; that the subject-matter and title to the bill as introduced was not germane to the bill as passed, but was and is wholly foreign thereto, and not for the same or a like purpose; that said act, as passed, was not read three times in each House before its final passage.

Because the title of said act does not express all the objects of the bill, in this, to wit:

*a*—By its title the only object expressed is to provide for the construction and maintenance of stone, gravel, macadamized, and dirt roads in the county of Saginaw, and to raise $100,000 therefor by issuing bonds, while in the body of the act the objects expressed allow the building of plank-roads and other roads not mentioned or expressed in the title.

*b*—The body of the bill designates certain roads named as the ones to be improved, constructed, etc., while the title does not.

*c*—The body of the act creates and establishes certain

"State roads" which were not such before, while the title expresses no such object.

d—The body of the act permits by its terms the delegation of certain powers therein enumerated to the board of Saginaw road commissioners, namely, the letting of contracts and expenditure of money, and acceptance of work, not expressed in the title.

e—The body of the act purports to permit the board of supervisors of said county to change the stone-road districts fixed by said act and not expressed in its title.

That the act is multifarious in its objects and provisions, by embracing more than one object; that the title of the act embraces more than one object; that the notice of election required by said act to be given is insufficient in length of time, and also, by making the notice given under another and differently entitled and void act notice of election in part under this act he complains of; that the act is also unconstitutional and void for the reasons above set forth; that no sufficient notice of the election was given in fact; that neither he nor his property will receive any benefit from the construction or maintenance of the roads, but that the same will be of damage to him and his property, and he will be assessed, and compelled to pay, large sums of money because of the issuing and negotiation of said bonds, if the same are permitted to be issued and negotiated.

The defendants answered, admitting that the act was reported by the committee on roads and bridges in the House of Representatives as a substitute for a bill entitled as set forth by complainant in his bill of complaint, but averring that the subject-matter of said bill, as first introduced under such title, was germane to the act as passed; that the body of said House Bill No. 214 contained provisions of the same general nature and purpose as those contained in the body of the substitute,—the act as passed,—and that it was lawful and proper to amend

the title at the ·time said substitute was reported and passed.

They allege· that said act contains but one object, which is expressed in its title; and deny that the said act is unconstitutional and void for any of the reasons stated in said bill of complaint; and allege, on the contrary, that the same is valid, and was constitutionally passed; that it was read three times in each House before its passage; that it passed the House by a vote of 63 to 2; that it passed the Senate unanimously; that· it passed as "House Bill No. 214;" that said bill was introduced within the first 50 days of the present session; that it was duly signed and certified by the presiding officers of each House of the Legislature under the rules and practice of such Houses; that it was duly approved by the Governor of this State, and deposited in the office of the Secretary of State of this State with the other duly-enacted laws of ·Michigan; and the Secretary of State sent to the sheriff of Saginaw county a certified copy of said act before the notice of election mentioned in said bill was given by said sheriff.

They aver, also, that the notice of election was sufficient, and that more votes were cast upon this question than upon any other submitted to the electors of said county at said spring election. They admit the amount of complainant's property as stated by him, but deny that the issuing of the bonds will be of damage to him or his property, but allege that he will be benefited .thereby. They admit their purpose and intent to issue the bonds and to proceed under the act.

Under these pleadings testimony was taken and a hearing had. The circuit judge entered a decree as pray.ed by complainant, holding that it could fairly be presumed from the title of House Bill No. 214 that its object, as stated in the body of the bill as introduced, was to vacate

a State road, or a part of a State road, in the county of Midland; that the title to a bill could be amended, but not so as to change the nature of both the bill and the title, and have the bill, when finally passed, embrace an entirely different object and purpose from that originally intended; that the substitute—the act as passed—was not introduced within the 50 days, the constitutional limit; that the substance of said substitute not being at all germane to the original bill, but entirely foreign to it, the legislative committee could not present it to the House for the first time after the 50 days had expired; that it was an evasion and violation of the provision of the Constitution (Article 4, § 28) that—

"No new bill shall be introduced into either House of the Legislature after the first fifty days of a session shall have expired."

This case presents a question not yet passed upon by this Court, and one of grave import. It presents facts as to methods of legislation not covered by the facts in *Attorney General v. Rice*, 64 Mich. 385 (31 N. W. Rep. 203), or *People v. McElroy*, 72 Id. 446 (40 N. W. Rep. 750). If the constitutional provision can ever be evaded or violated by the reporting and passing of a substitute for an original bill, it certainly has been evaded and violated in this case. And if this legislation can be upheld it would seem that the constitutional provision above quoted is worthless to prevent the evil against which it is manifestly directed. If a new bill can be reported as a substitute for a bill, the subject-matter of which has no connection with or relation in the remotest degree to the subject-matter of such new bill under the guise of a substitute, then it is difficult to perceive the use or value of this constitutional provision.

No one will admit for a moment that the framers of

the Constitution ever intended that this provision should be rendered nugatory in this way. Courts have gone a great ways to uphold legislation that apparently trenched on this or similar provisions in constitutions, and have sometimes, it seems to me, strained the constitution almost to breaking, to sustain laws that in their passage came close to, if not within, the line of the prohibition of the fundamental law. I, for one, have gone as far in this direction as my conscience and duty will permit me. Let the consequences as to laws already on our statute-books be what they may, it is time to call a halt in this direction. If the constitutional provision is in the way of legislation, and the people desire that new bills may be introduced at any time during the session, there is a constitutional way to get rid of this provision. But it is the duty of the courts, while it remains in the Constitution, to see that it is obeyed.

Parol evidence of members of the Legislature was introduced to show the proceedings in that body, and to prove the contents of the body of House Bill No. 214 as introduced. This was not permissible, under all the authorities. See *Attorney General v. Rice,* 64 Mich. 385, 391; *People v. McElroy,* 72 I d. 446, and cases there cited. But we have a right, as heretofore held, to examine the journals of the Legislature; and, while the presumption is decidedly strong that the Legislature has not violated the Constitution, still, if the proof furnished by the journals is clear that the act was not constitutionally passed, it is the duty of the courts to so declare, and to hold it void. *Green v. Graves,* 1 Doug. 351; *People v. Supervisor,* 16 Mich. 254; *Attorney General v. Rice,* 64 Id. 385; *People v. McElroy,* 72 Id. 446.

The parol testimony shows a plain violation of the Constitution, but we shall not act upon it or consider it,

for the reasons above stated. In my opinion, there is clearly shown the same violation by the journals.

The title to House Bill 214, as originally introduced by Mr. Salisbury, of Midland, referred simply to the discontinuance of a part of a State road in Midland. It had nothing to do with anything in Saginaw county. It was so particular as to specify the road, and the exact portion of it, to be taken up. No part of it was in Saginaw county. The body of the bill, as indicated by the title, could possibly have embraced none of the territory involved in and covered by the bill as it was finally passed. We have the right to take judicial notice that territory specifically described and located in the county of Midland does not include any part of the county of Saginaw. Therefore the language of this Court in *Attorney General v. Rice*, 64 Mich. 390, that—

"It would be presumed that the bill substituted [for a bill under the title to organize the township of Au Train], to organize the township of Ironwood, had in view the same general purpose as the first bill,—to give to the inhabitants of the territory described a distinct municipal government,"—

Cannot apply here. There the change was only in the name of the township, and the title as introduced and the title as passed gave no hint but what the territory in the body of the bill was the same. The presumption, under the rule heretofore stated, in favor of the constitutionality of legislative action, would be that the territory was the same. And there we properly held such to be the presumption, and that the Legislature had power to increase or diminish the territory included in the bill by amendment. But here the particular place in a particular county, and a particular object, is stated in the title. We cannot presume that the body of the bill was entirely at variance with this title. Indeed, the same

presumption in favor of legislative action must obtain to
the contrary,—that the title throws some light upon the
object of the bill, and is some indication of what is con-
tained in the body of it.   *People v. McElroy,* 72 Mich.
446.

We did not intend, by what was said in *People v.
McElroy,* in relation to the form or *status* of the title at
the time of the introduction of a bill, or while it was
pending, being immaterial, to hold that the language of
the title could not be inquired into and used in an inves-
tigation of this kind.  It is a part of the journals, and
can be used to support or rebut a presumption of the
correctness of legislative action, as was done in that case.
And where the words of a title, as introduced, are as
clear and specific as they are in this case, such title
becomes of great importance in determining whether the
mandate of the Constitution has been obeyed or its
requirements followed in the passage of an act.

In *People v. McElroy, supra,* the title of the act, as
introduced, did not necessarily show that different terri-
tory was to be acted upon than that included in the
body of the act as passed.  It clearly showed that the
lands to be incorporated were in the same county, and
that the same general purpose was in view, to wit, the
incorporation of certain territory in the same county (St.
Clair) into a new political organization or municipality.
The writer of this opinion certainly went as far in that
case to sustain the legislation there involved as he is
prepared to go.  There must be a limit somewhere.
Either we must hold that when a law is passed and
enrolled, and is authenticated by the signatures of the
presiding officers of both Houses, and bears the approval
of the Governor, the courts cannot go behind those cer-
tificates, as is held in some of our sister states (see cita-
tions in *People v. McElroy,* 72 Mich. 450), or this act

before us must be declared to have been passed in violation of our Constitution.  If we should reverse our former holdings, and decide that we would not look even into the journals for the existence of facts showing that this provision of the Constitution had been violated, we would, in my opinion, abdicate our legitimate function in favor of the Legislature and the Governor, who would then be the sole judges of constitutional methods in the enactment of laws, and we would also violate our plain duty in the premises.

The journals show a plain case of an evasion and violation of the Constitution.  It would seem that some legislation of the kind attempted in the act before us was contemplated in the beginning of the session.  January 25, 1889, Mr. Connor, of Saginaw, introduced in the House a bill entitled—

"A bill to provide for the construction and maintenance of stone, gravel, macadamized, and other roads in the county of Saginaw, and to raise the money therefor,"—

Which was known as "House Bill No. 95" (House Journal, 109), and referred to committee on roads and bridges, and reported and put on general order January 28 (House Journal, 123), and became House file No. 41, and recommitted to same committee, January 31 (House Journal, 164).  Said committee reported it amended March 6, whereupon the rules were suspended, and it was passed by the House the same day, and certified to the Senate, and there passed and reported to the House as duly passed, and by the House referred to the committee on engrossment and enrollment, March 7.  It was enrolled and approved March 8.  House Journal, 401, 413, 427.

The 50 days for introducing bills under the Constitution expired February 21, 1889.  The journals show that

on that day, with the exception of the bill above referred to and introduced by Mr. Connor, there was no bill pending in either branch of the Legislature the title of which had any reference to the building of stone roads in Saginaw county. The day before the limit expired Mr. Zagelmeyer, of Bay county, introduced in the House a bill entitled—

" A bill to establish a State road in Bay county.".

It was referred to committee on roads and bridges same day. House Journal, 312. March 12, 1889, the committee reported a substitute for the Zagelmeyer bill, entitled—

" A bill to provide for the construction and maintenance of stone, gravel, macadamized, and other roads in the county of Saginaw, and to authorize said county to issue bonds to raise the money therefor."

This title, it will be noticed, was almost identical with the title of the act under consideration. It differed only in not stating the amount of bonds to be raised. The rules were suspended, the bill passed and given immediate effect, same day. Id. 458. It was immediately sent to the Senate, and passed by that body in short order. It came back to the House the same day, and was referred to the committee on engrossment and enrollment. It was approved by the Governor, March 13, 1889. Id. 476. The Legislature had now passed two acts, both approved by the Governor, and both for the same object and purpose, and nearly alike in detail and phraseology. See Local Acts of 1889, p. 179, Act No. 314; Id. p. 192, Act No. 322.

March 12, 1889, before it was approved, a notice of election under the last act was given by the sheriff of Saginaw county. But for some reason or reasons, into which it is not necessary to inquire, neither of these acts suited the parties interested in their passage, and the

further legislation was resorted to. House Bill No. 214 had been introduced February 13, 1889, by Representative Salisbury, of Midland. House Journal, 187. Its title has already been stated in this opinion. March 20, 1889, the committee on roads and bridges reported a substitute for it, which is the act involved in this case. The rules were suspended, the substitute passed, given immediate effect, and sent to the Senate. Id. 533. Passed the Senate same day (Senate Journal, 525), came back to the House, referred to engrossment and enrollment committee, March 21, 1889, on which day it was approved by the Governor, and certified by the Secretary of State. March 22, 1889, a new notice was issued by the sheriff for an election under this law on April 1, 1889. We now have three laws for the same purpose on the local statute-book of 1889, and alike in general tenor and object. This showing upon the journals of the Legislature raises a strong presumption to support the oral proof that the bills of Zagelmeyer and Salisbury were "borrowed," to evade and violate the constitutional provision standing in the way of the introduction of a new bill. As a matter of fact, every person of average common sense reading the journals, imperfect as they are in detail, knows it was done.

This case differs materially from *Attorney General v. Rice, supra,* and *People v. McElroy, supra,* as heretofore shown. But there is another radical difference not yet alluded to. In each of the cases above noted the title of the bill as introduced and the title of the act as passed pertained to the same general object and purpose,—the incorporation of territory presumably in the same county, and in one case the same territory, into townships or municipalities. In this case the general purpose is not the same, but the opposite. One title indicates the discontinuance of a section of a State road in Midland

county; the other, the bonding of Saginaw county to build and maintain stone and other roads within the limits of that county. To hold, from the journals of the Legislature, that the body of the act as passed must be presumed to be germane to the body of the bill as introduced in this case, would be to entertain in this Court a presumption which intelligent men out of court would laugh at, and be justified in doing so. We cannot shut our eyes to this record,—to that which he who runs may read,—for the purpose of saving this or any other statute. The evil consequences, if any, to follow our decision in this case, as a precedent applied to other existing statutes, will not be of our creation, but the necessary result of such legislation as this before us, if the Constitution is to be regarded or respected in the hands of its keepers. Such considerations as the effect of our holding upon other laws that may have been passed in the same way cannot bear weight against our plain duty in as clear a case as this. The judge of the circuit court for the county of Saginaw was right in his reason for granting the complainant relief. It is not necessary to examine the other questions raised in the case.

The decree of the court below will be affirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred. LONG, J., did not sit.