PEOPLE, *ex rel.* BOARD OF SUPERVISORS OF KENT COUNTY, *v.* LOOMIS.

1. CONSTITUTION — PROPOSED AMENDMENT — JOURNAL ENTRIES — BOARDS OF COUNTY AUDITORS.

    The entry in the journal of the house of representatives of a proposed amendment to the Constitution, art. 10, § 10, providing for a board of county auditors in Wayne county, and the amendments thereto adopted before it was finally approved, and the entry in the senate journal of the amendment as finally approved, constituted a sufficient compliance with article 20, § 1, requiring a proposed amendment, if agreed to by each house, to be entered upon their respective journals.

2. SAME—SUBMISSION—LEGISLATIVE CONTROL—BALLOTS.

    Article 20, § 1, of the Constitution, providing for the submission to the electors of a proposed constitutional amendment, does not indicate the manner of submission, but leaves it subject to legislative direction; and 1 Comp. Laws, § 3657, requiring the substance of the amendment to be printed on the ballots, was not controlling in the present case, as the resolution of

submission (Joint Res. No. 3, Pub. Acts 1903) explicitly pro-
vided what the ballots should contain.

3. SAME—BILL—SUBSTITUTE—50-DAY LIMIT.
   A bill creating a board of county auditors for Jackson county
   having been introduced, the substitution of Kent county for
   Jackson county (Act No. 521, Local Acts 1903) rendered it a
   new bill, which, having been reported out on the 87th day of the
   session, offended against the constitutional provision (article
   4, § 28) prohibiting the introduction of a new bill after the
   first 50 days of the session.

Case made from Kent; Wolcott, J.   Submitted Decem-
ber 12, 1903.   (Docket No. 250.)   Decided February 2,
1904.

*Quo warranto* proceedings by the people of the State
of Michigan, on the relation of the board of supervisors of
Kent county, to inquire into the right of Robert B. Loomis,
William P. Wolf, and Sylvester Hicks to hold the office
of board of county auditors of said county.   There was a
judgment for respondents, and relator assigns error.
Reversed, and judgment of ouster entered.

*Rodgers & Rodgers*, for appellant.

*Ward & Brown*, for appellees.

HOOKER, J.   At its 1903 session the legislature passed
a law providing for the appointment by the governor of
three persons, to constitute a provisional board of county
auditors for the county of Kent; their successors to be
elected at the general election in the year 1904.   On June
15, 1903, such appointments were made, and the respond-
ents have since assumed to hold such office.   This pro-
ceeding is in the nature of a *quo warranto*, instituted by
one De Graaf, by authority of the board of supervisors of
the county, under leave granted by the circuit court, to
inquire into respondents' right to hold such offices; it
being claimed by the relator that the law is in conflict with
section 10 of article 10 of the Constitution.   At the same

(*i. e.*, the 1903) session the legislature adopted a joint resolution submitting to the electors of the State an amendment to section 10 of article 10 of the Constitution, reading as follows:

" The board of supervisors, or, in the counties of Saginaw, Jackson, Washtenaw, Kent, and Wayne, the board of county auditors, shall have the exclusive power to fix the compensation for all services rendered for, and to adjust all claims against, their respective counties, and the sum so fixed and defined shall be subject to no appeal."

This was submitted to the electors at the April, 1903, election, and adopted, after which said act (being Act No. 521 of the Local Acts of 1903) was passed and approved. The constitutionality of both the amendment and the act is attacked, and it is upon this question that the case must turn. The circuit court sustained the validity of both amendment and law, and the respondents' authority and title to the office, and the relator has brought the proceeding before us.

Did the action of the legislature authorize the submission of the proposed amendment? Section 10 of article 10 of the Constitution, as it theretofore existed, provided for a board of county auditors in the county of Wayne, and that county only. Counsel for relator assert that the resolution was offered on February 12th in the house of representatives, and that it provided for a board of county auditors for the county of Saginaw. On February 20th the committee on towns and counties reported the resolution, with amendments to include Jackson and Washtenaw counties. The resolution was then agreed to by two-thirds of the members elected to the house of representatives, and the resolution, as amended and passed, was then entered in full on the house journal, with the yeas and nays taken thereon. Kent county was not included. It was then transmitted to the senate, and referred to the committee on constitutional amendments, which committee, on February 26th, reported it by its title, " with certain amendments, recommending that the

amendments be concurred in, and that, when so amended, the joint resolution pass." The resolution was then agreed to, and entered at length in the senate journal, with Kent county included. It is noticeable that the only substantial change made from the resolution as entered in the house journal was the inclusion of Kent county. Counsel contend that the senate journal does not show what amendment was made by the senate.

The house journal contains an entry, dated February 26th, to the effect that the joint resolution was returned to the house by the secretary of the senate, informing the house that the senate had amended the same so as to include the county of Kent, and that the same had passed the senate by a two-thirds vote; and it also shows, under date of March 4th, that the senate amendment was concurred in by the house by a two-thirds vote, the title as amended by the senate, to include Kent county, agreed to, and the resolution referred to the clerk of the house for printing and presentation to the governor. It was at no time entered in full in the house journal as finally passed.

It is contended that the senate journal fails to show what amendment was made in the senate, and that the house journal cannot be relied upon to show the senate's action; also that the house journal fails to show what resolution finally passed the house, and that it was not entered upon the journal of the house, as required by Const. § 1, art. 20:

"If the same shall be agreed to by two-thirds of the members elected to each house, such amendment shall be entered on the journals respectively."

The following is a verbatim copy of the proceedings of the house:

"The following message from the senate was received and read:

"'SENATE CHAMBER, February 26, 1903.
"'To the Speaker of the House of Representatives.
"'*Sir:* I am instructed by the senate to return to the

house the following joint resolution: House joint resolution No. 275, entitled:

"""A joint resolution proposing an amendment to the Constitution of this State by so amending section 10 of article 10 as to provide for a board of county auditors in the counties of Saginaw, Jackson, and Washtenaw;"—

" 'And to inform the house that the senate has amended the joint resolution as follows:

"' '(1) By inserting in line 2, section 10, of article 10, after the word "Washtenaw," the word "Kent."

"' '(2) By striking out of line 21, section 10, of article 10, the words "and Washtenaw," and inserting in lieu thereof the words "Washtenaw and Kent."

"' '(3) By striking out of line 23, section 10, of article 10, the words "and Washtenaw," and inserting in lieu thereof the words "Washtenaw and Kent;" and by amending the title to read as follows:

" ' "A joint resolution proposing an amendment to the Constitution of this State by so amending section 10 of article 10 as to provide for a board of county auditors in the counties of Saginaw, Jackson, Washtenaw, and Kent;"—

"' 'And now to inform the house that in the passage of the joint resolution the senate has, by a two-thirds vote of all senators-elect, concurred, and has also concurred in ordering the joint resolution to take immediate effect.

"' 'Very respectfully,

"' 'ELBERT V. CHILSON,

"' 'Secretary of the Senate.'

"The question being on concurring in the amendments made to the joint resolution by the senate, Mr. Anderson moved that the joint resolution be laid on the table. The motion prevailed."

On the 4th day of March, 1903, the following proceedings took place in the house of representatives, to wit:

"Mr. Sanderson moved to take from the table house joint resolution No. 275, entitled 'A joint resolution proposing an amendment to the Constitution of this State by so amending section 10 of article 10 as to provide for a board of county auditors in the counties of Saginaw, Jackson, and Washtenaw.' The motion prevailed. The question being on concurring in the amendments made to the joint resolution by the senate, the amendments were concurred

in, two-thirds of all the members-elect voting therefor by yeas and nays as follows: [Here follows the vote by yeas and nays.]

"The question being on agreeing to the title of the joint resolution as amended by the senate, the title was agreed to.

"The joint resolution was then referred to the clerk for printing and presentation to the governor."

It is contended upon behalf of the respondents that the entry of the foregoing in the house journal, taken in connection with the resolution as it first passed the house, was a substantial compliance with article 20, § 1, requiring an entry of the amendment upon the journals "if the same shall have been agreed to by two-thirds of the members of each house." It must be admitted that the senate journal shows the resolution passed by that body, and we think the entry is a full compliance with the Constitution. It needs no aid from the house journal to show its final conclusion. Upon the other hand, the house journal shows the resolution as it first passed the house, and it shows at a later date the message from the senate, which is entered at length, including the amendments stated to have been made by the senate, which the house thereupon concurred in, the yeas and nays being entered. It is apparent that it is ascertainable from the house journal that the house, by its action first and last, passed the identical resolution which passed the senate, and appears on the senate journal. Is such a piecemeal entry of the resolution a compliance with the provision of section 1, art. 20, of the Constitution, that "If the same [*i. e.,* proposed amendment] shall be agreed to by two-thirds of the members elected to each house, such amendment or amendments shall be entered on the journals respectively, with the yeas and nays taken thereon, and the same shall be submitted to the electors," etc.?

There is a want of harmony in the authorities as to what is a compliance with this provision. The question has several times arisen where the journals failed to show the resolution in full, but referred to and identified it by num-

ber and title.   Some cases hold to the rule that the constitutional provision clearly means that the resolution shall be set out in full upon the journals as it finally passed the respective houses; others, that it is sufficient if the terms of the resolution are ascertainable from the journals by reference.   Of the latter class, the following are in point: *Prohibitory Amendment Cases*, 24 Kan. 700; *People* v. *Strother*, 67 Cal. 624 (8 Pac. 383); *Oakland Pav. Co.* v. *Tompkins*, 72 Cal. 5 (12 Pac. 801, 1 Am. St. Rep. 17); *Worman* v. *Hagan*, 78 Md. 152 (27 Atl. 616, 21 L. R. A. 716); *State* v. *Herried*, 10 S. Dak. 109 (72 N. W. 93); *Nesbit* v. *People*, 19 Colo. 452 (36 Pac. 221).   Upon the other hand, the following cases assert a contrary doctrine: *Koehler* v. *Hill*, 60 Iowa, 543, 603 (14 N. W. 738, 15 N. W. 609); *Oakland Pav. Co.* v. *Hilton*, 69 Cal. 479 (11 Pac. 3); *State* v. *Tufly*, 19 Nev. 394 (12 Pac. 835, 3 Am. St. Rep. 895); *Union Bank of Richmond* v. *Commissioners of Oxford*, 119 N. C. 214 (25 S. E. 966, 34 L. R. A. 487).   See, also, *Collier* v. *Frierson*, 24 Ala. 100.

It is a significant fact that most, if not all, of the cases cited adhere to the view that the constitutional provision is mandatory, and we are impressed that those cases which require an entry of the resolution in full as passed have much the better of the argument.   See *Koehler* v. *Hill*, *Oakland Pav. Co.* v. *Hilton*, and *Union Bank of Richmond* v. *Commissioners of Oxford*, *supra*, and our own cases of *Green* v. *Graves*, 1 Doug. 351, 356; *Rode* v. *Phelps*, 80 Mich. 598 (45 N. W. 493); *People* v. *Dettenthaler*, 118 Mich. 595 (77 N. W. 450, 44 L. R. A. 164). But it is unnecessary to determine the question, as we think that the journal of each house shows the resolution in full as passed by it.   We do not overlook the contention of counsel that the full entry shall be made after the passage.   The word used is not "after," but "if," and it is a technical construction which would require that we hold that an entry that "the house passed the following resolution" is good, when followed by the entry of the resolution as passed, while one stating that "the foregoing reso-

lution [entered in full] was passed by the house" is bad, the yeas and nays being given in both instances.    There is not the least inaccuracy in these records.    They agree perfectly, and we think them a compliance with the provision of the Constitution relied on.

Was the proposed amendment properly submitted to the electors of the State?    The constitutional provision is, "and the *same* shall be submitted to the electors."    If this means that the entire resolution shall be printed upon the ballot, the course taken in this case is not in conformity to the Constitution, for this is the form adopted:

"Amendment to the Constitution providing a board of county auditors for the counties of Saginaw, Jackson, Washtenaw, and Kent—Yes.

"Amendment to the Constitution providing a board of county auditors for the counties of Saginaw, Jackson, Washtenaw, and Kent—No."

Again, 1 Comp. Laws, § 3657, provides:

"Whenever any constitutional amendments or other questions are proposed to be submitted to the electors, the board of election commissioners of each county shall cause them all to be printed on one ballot, separate and distinct from the ballot containing the names of nominees for public office, the substance of each amendment or other question to be clearly indicated upon said ballot by a suitable designation in distinct and easily legible type, with the words 'Yes' and 'No' printed below it in separate lines."

It is said that the substance of the amendment was not given.

We do not infer from the language of article 20, § 1, that it was the intention of the convention that the full text of the proposed amendment should be printed upon each ballot twice, or even once, or that the language was intended to indicate the manner of submission, but merely to provide that the amendment proposed should be submitted at the time specified.    It is silent as to the method, and therefore it was subject to legislative control and direction.    It is unnecessary, though it might be interest-

ing, to examine the condition of the statutes previous to the passage in 1897 of section 3657, which appears to have been the first law requiring the substance of the resolution to be printed upon the ballot. It is suggestive of a change that should require the ballot to contain information of the proposed change, and may have been intended to put a stop to the method theretofore prevailing. It is not necessary to decide whether the submission in this case conformed to this statute, for the same power that passed the statute had power to repeal or suspend it, and the resolution before us contains explicit provisions as to what the ballots should contain. Joint Resolution No. 3, Pub. Acts 1903. The ballots having conformed thereto, the point raised cannot prevail.

Was Act No. 521, Local Acts 1903, valid? On February 20th a bill was introduced in the house of representatives entitled "A bill to provide for a board of county auditors for the county of Jackson," etc. It was referred to the committee on towns and counties, and was reported out May 22d (being the eighty-seventh day of the session), with a substitute identically like the bill originally introduced, except that the county of Kent was substituted for that of Jackson. Some unimportant amendments were made to the substituted bill, and it was passed by both houses and approved by the governor. We have had many cases arising over the sufficiency of titles of bills, where we have held that they cover all provisions germane to the subject-matter of the bill. *Attorney General* v. *Amos*, 60 Mich. 372 (27 N. W. 571); *Van Husan* v. *Heames*, 96 Mich. 506 (56 N. W. 22); *Tillotson* v. *Saginaw Circuit Judge*, 97 Mich. 585 (56 N. W. 945); *Toll* v. *Jerome*, 101 Mich. 468 (59 N. W. 816); *City of Grand Rapids* v. *Judge of Superior Court*, 102 Mich. 321 (60 N. W. 698); *In re Yell*, 107 Mich. 228 (65 N. W. 97); *People* v. *McGlaughlin*, 108 Mich. 516 (66 N. W. 385); *Fish* v. *Stockdale*, 111 Mich. 46 (69 N. W. 92); *City of Detroit* v. *Wayne Circuit Judge*, 112 Mich. 319 (70 N. W. 894); *People* v. *Huntley*, 112 Mich. 569 (71 N.

W. 178); *City of Jackson* v. *Jackson County Treasurer,*
117 Mich. 305 (75 N. W. 617); *McMorran* v. *Great
Hive L. O. T. M.,* 117 Mich. 398 (75 N. W. 943). The
same principle seems to govern this question. If the
amendment or substituted bill presents a measure that
has no relation to the bill as originally introduced, it can-
not stand, for it is in substance a new measure or bill. If,
however, the substitute has a clear relation to the subject
of the original bill, it can be said to be germane, and will
not be treated as a new bill. The following cases have
been cited as bearing upon the question: *Pack* v. *Bar-
ton,* 47 Mich. 520 (11 N. W. 367); *Attorney General* v.
*Rice,* 64 Mich. 385 (31 N. W. 203); *Hart* v. *McElroy,*
72 Mich. 453 (40 N. W. 750); *Sackrider* v. *Saginaw
Co. Sup'rs,* 79 Mich. 59 (44 N. W. 165); *Caldwell* v.
*Ward,* 83 Mich. 17 (46 N. W. 1024); *Toll* v. *Jerome,*
101 Mich. 468 (59 N. W. 816). Of these, all but two are
cases where the action of the legislature was sustained.
They are therefore chiefly valuable for the discussions
they contain, and as showing the extent to which the
court has gone in holding substitutes valid.

The case of *Sackrider* v. *Saginaw Co. Sup'rs* was a
case where a bill was introduced to discontinue a specified
portion of a particular State road in Midland county.
The legislature passed a substitute providing for the con-
struction of stone and other roads in Saginaw county, and
raising money by bonds to pay for the same. It was held
to be a new bill.

*Caldwell* v. *Ward,* 83 Mich. 13 (46 N. W. 1024), was a
case where a bill was introduced to authorize the town-
ship treasurers of Kalkaska county to enforce the collection
of taxes. The substitute provided for the filing of bills for
injunctions to restrain waste upon lands upon which there
were taxes due and unpaid. This applied to the entire
State. It was held that the substitute was germane to the
subject-matter of the first bill, which was said to be the
enforcement of the collection of taxes. In the case before
us, the bill first introduced related to county auditors.

Like the Kalkaska and Midland county measures, it was local in its application. Under the rule in that case, it would have been germane had the substitute added all other counties covered by the amendment; being within the rule laid down in the case of *Caldwell* v. *Ward*. And under that rule we cannot doubt that amendments adding some and eliminating other counties from the measure would have been proper. Here the substitute had the effect of striking out the county of Jackson from the bill, and substituting Kent. If the substitute had simply added the other counties covered by the amendment, the case would in one particular, viz., that of territory, have been upon all fours with the Kalkaska case. In another it would not have been open to the same criticism which may be made upon that case, for, while this bill made no other change in the substance of the measure as introduced, the Kalkaska substitute made an important one, which could only have been sustained upon the doctrine that, as it could fairly be said to be a means to the same end, it was germane to the original measure. The only particular in which we can differentiate these cases in principle is that of local interest.

An examination of the other cases cited will show the trend of opinion in relation to such cases.

In *Pack* v. *Barton*, 47 Mich. 520 (11 N. W. 367), the bill, seasonably introduced, was for the organization of the township of Montmorency. Subsequently it was so changed as to make it a bill for the organization of the county of Montmorency, and the bill was so passed. The territory was the same in both bills. Mr. Justice Cooley said, in substance, that the two bills had the same general purpose, *i. e.*, to give the inhabitants of the *territory described* a distinct municipal government,— of different grades, to be sure, but there was no departure in the second from the general intent of the first; that no necessary inference arose that, "in the change made, there was a purpose to evade the constitutional command;" and that:

"The question being one of organizing the inhabitants of a particular territory for the purposes of local government, the legislature, on consideration of the scheme proposed, concluded to modify it to the extent of conferring county powers where only township powers had been proposed. To attempt, on this record, to indicate the limits of constitutional power in the amendment of bills previously introduced, would be uncalled for, and therefore unwarranted. It suffices to say that in this case, where the general purpose has been kept in view, and a design to circumvent or disregard the Constitution is not apparent, it cannot be held that the constitutional authority has been exceeded. No one disputes that whatever is within the proper scope of amendment is as much admissible after the fifty days as before, and this must embrace whatever is germane to the purpose which the bill had in view."

It is noticeable that in that case the particular territory was the same in both bills, and the organization of this, and not some other, territory was the object of both bills; and there is no suggestion that the second bill would have been germane to the subject of the first had it referred to other and wholly distinct territory, and we might naturally infer the contrary.

The cases of *Attorney General* v. *Rice*, 64 Mich. 385 (31 N. W. 203), and *Hart* v. *McElroy*, 72 Mich. 453 (40 N. W. 750), contain the intimation that such changes in legislation which may be called local, as contradistinguished from general, laws, are contrary to the Constitution. Thus, in the former, a substituted bill providing for the organization of the township of Ironwood was sustained, although the bill originally introduced was "a bill to organize the township of Au Train," which was alleged by the replication to be in Alger county. The court sustained the act upon the distinct ground that the presumption was that the *territory was the same in both bills*, in part at any rate, and refused to go behind the journals or the certificate of the Secretary of State to ascertain the contrary.

So in *Hart* v. *McElroy*, 72 Mich. 452 (40 N. W. 750), where the bill as introduced was, "A bill detaching cer-

tain lands from the township of Ft. Gratiot, in the county of St. Clair, and organizing the same into a new township, to be known as the township of 'Huronia,'" and the substitute was, "A bill to incorporate the city of Marine City, in the county of St. Clair, and to repeal Act No. 328 of Local Acts of 1885, entitled 'An act to re-incorporate the village of Marine City,' approved April 23, 1885,"—it was sought to show that the territory was not the same in both bills, and the court said:

"We have no right to presume that *the body of the substitute was not germane to the body of the bill.* The title throws some light upon the subject, in both the bill and substitute, and from these titles it would appear that the subject to be legislated upon related to the same matter, to wit, the incorporation of certain territory in the same county of St. Clair into a new political organization or municipality,—the bill, to take territory from the township of Ft. Gratiot, in the county of St. Clair, and organizing therefrom a new township, to be called 'Huronia;' and the substitute, to incorporate the city of Marine City, within the same county. See *Attorney General* v. *Amos,* 60 Mich. 372, 380 (27 N. W. 571). We are not informed by the journal what the description of this particular territory was in the body of the bill as introduced, and we cannot go outside of the journals to ascertain it; nor do we consider that it was necessary that the description of the territory in the bill should have been identical with that of the substitute. The lands and property to be affected in both the bill and substitute evidently, from the titles, being in the same county, we are not prepared to say that even the spirit of the constitutional provision was violated. Certainly there is no affirmative showing from the journals that the letter of the constitutional requirement was not observed."

It is significant that in neither of these cases was the question before the court disposed of upon the theory contended for here, and apparently the court considered the presumption of identity of territory, in whole or in part, essential to the conclusion reached.

In the case of *Sackrider* v. *Saginaw Co. Sup'rs,* 79 Mich. 59 (44 N. W. 165), Mr. Justice MORSE, who wrote

the opinions in the last two cases mentioned, again wrote an opinion in harmony with his views expressed in those cases, and held the law invalid.

Where, then, is the distinction between these cases and the case of *Caldwell* v. *Ward*, *supra*, if not in the fact that in them the proposed legislation is essentially of local interest, while in that ( *i. e.*, *Caldwell* v. *Ward* ) it may be said to be of general public interest? In a sense it may be said that the entire State is interested in the organization of townships, school districts, and highway districts in every locality. See *Attorney General* v. *Lowrey*, 131 Mich. 639 (92 N. W. 289). But the nature and degree of interest is different and greater in matters pertaining to the collection of taxes in such localities. As has been suggested, a bill to change the boundaries of a school district in Iron county, introduced as a substitute for one to change the boundaries of a school district in Monroe county, could hardly be said to be germane to the subject of the latter, and, as in the present case, it would seem to be a clear disregard or evasion of the constitutional provision.

The measure before us is apparently a meritorious one, but that does not warrant a disregard of constitutional provisions designed as a public protection, the effect of which would be to take away such protection in cases where it is needed, through the practical nullification of the fundamental law.

We are constrained to reverse the judgment of the circuit court, and remand the cause, with directions to enter a judgment of ouster, without costs to either party. No costs of this court will be allowed.

The other Justices concurred.