TORO ET AL., PETITIONERS, *v.* DISTRICT COURT OF SAN JUAN, RESPONDENT.

PETITIONS for Writs of Certiorari to the District Court of San Juan in *Quo Warranto* Proceedings.

Nos. 349 and 350.—Decided May 22, 1922.

QUO WARRANTO—JUDICIAL DISTRICT OF SAN JUAN.—Act No. 41 of 1921 left the judicial district of San Juan as it was, but created within it, instead of the existing one court divided into two sections, two courts which, with their juries, may work independently, though the seat of both is in the city of San Juan.

ID.—ID.—SEPARATE TERRITORY.—The law having assigned certain municipalities of the district to each of the courts created, the particular territory of each court comprises the said municipalities, and the city of San Juan having been expressly assigned to the First District Court of San Juan, it is the same as any of the other municipalities and the fact that the Second District

Court of San Juan is also in the city of San Juan does not signify that it is included within the special territory of the Second District Court.

ID.—ID.—ID.—RESIDENCE OF PARTIES.—The general rules of the Code of Civil Procedure as to the place of trial are applicable to the two district courts of the judicial district of San Juan created by Act No. 41 of 1921. This being the case, and the defendants in certain *quo warranto* proceedings instituted in the District Court of San Juan, Second District, having relied on the fact of their residence in the city of San Juan to move for a transfer of the case to the District Court of San Juan, First District, their motion should have been sustained in accordance with the provisions of section 81 of the Code of Civil Procedure.

ID.—ID.—CONSTITUTIONAL LAW.—Act No. 41 of 1921 is not contrary to the provisions of subdivisions 5, 6 and 9 of section 34 of the Organic Act of Porto Rico.

The facts are stated in the opinion.

Messrs. *J. A. Loret, R. H. Todd, Jr.,* and *J. Tous Soto* for the petitioners.

Messrs. *R. Rivera Zayas, M. Guerra* and *F. Soto Gras* for the respondent.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The People of Porto Rico, at the relation of Antonio R. Barceló, Cayetano Coll Cuchí and Manuel Camuñas, presented to the Second District Court of San Juan a petition for a writ of *quo warranto* directed to Carlos Toro Labarthe requiring him to appear and confess judgment of ouster or show by what authority he was in possession of the office of Commissioner of Agriculture and Labor of Porto Rico, praying for judgment to the effect that the respondent has no right to hold the said office and that relator Manuel Camuñas is the *de jure* officer and the real and lawful Commissioner.

A similar proceeding was instituted by The People of Porto Rico, at the relation of Antonio R. Barceló, Cayetano Coll y Cuchí and Alejandro Ruiz Soler, against W. F. Lippitt, the holder of the office of Commissioner of Health of Porto Rico.

The writs were issued and each of the respondents duly moved for the transfer of his case to the First District Court

of San Juan for two reasons, the first being that the respondents resided within the jurisdiction of the said court.

The motions were argued by the parties and the court overruled them, holding that it had concurrent jurisdiction with the First District Court of San Juan over the city of San Juan. The trial judge delivered a lengthy opinion from which we will transcribe the following paragraph for the purpose of accurately presenting his aspect of the question:

"In synopsis, this court is a continuation of the old Section 2 of the District. Court of San Juan. Its location, jurisdiction and powers were formerly determined. The new law has changed its name and modified its jurisdiction as regards certain municipalities of the district, but neither expressly nor tacitly has it varied the jurisdiction which Section 2 had and this court now has over the city of San Juan. Therefore, the motions referred to can not be sustained."

At this juncture Carlos Toro Labarthe and W. F. Lippitt filed in this Supreme Court petitions for writs of certiorari, alleging that although the order refusing the transfer was appealable, that remedy would not be as speedy as was necessary in order to make it effective. In fact, an appeal from an order granting or denying a change of venue does not stay proceedings in the lower court, and besides, these being *quo warranto* proceedings, if the district court should adjudge the respondents guilty of usurping or unlawfully holding the said offices, its judgment could be executed notwithstanding an appeal therefrom. See section 298 of the Code of Civil Procedure.

The writs of certiorari were issued. The original record was brought up to this court. All of the interested parties have been heard and have filed briefs. We are, therefore, in a perfect position to decide the questions raised.

In reorganizing the judiciary of this Island in 1904 the Legislature divided the territory of Porto Rico into seven judicial districts, the first being the District of San Juan

located in the city of San Juan and made up of the municipalities of Bayamón, Carolina, Río Grande, Río Piedras, Toa Alta, Vega Baja, Comerío, Naranjito, Dorado, Corozal, Trujillo Alto, Loíza and San Juan. The collegial district courts were abolished and a single judge was assigned to each of the district courts of the seven judicial districts. See Acts of 1904, p. 103, and Acts of 1905, p. 117.

It soon became apparent that the volume of work of the District Court of San Juan was excessive and in 1906 the Legislature passed an act assigning to it two judges. The act contains fourteen sections. By the first section of the act it was provided that the district court for the judicial district of San Juan should consist of two judges and should be divided into two sections, to be known as section one and section two, each judge thereof to have the powers and jurisdiction thereinafter prescribed. Section 2 of the act prescribed that the judge of section one of said court should have the jurisdiction conferred by law on the district courts and the respective judges thereof, except in those matters over which jurisdiction was vested in section two of the court. Section 3 of the act provided that the judge of section two of the court should have jurisdiction in all criminal cases; in all suits in behalf of The People of Porto Rico to recover penalties and forfeitures within the district, and in all civil suits brought by The People of Porto Rico other than suits to recover real property in another district, and also appellate jurisdiction in criminal cases originating in municipal or peace courts within the district. See Acts of 1906, p. 96.

In the year 1907 the Legislature enacted another law which was in force until 1921, defining the jurisdiction of each of the two sections of the district court for the judicial district of San Juan. It was therein provided that the two sections should have and exercise concurrent jurisdiction throughout the limits of the judicial district of San Juan in

all civil matters, and that section two should have original and appellate jurisdiction in all criminal cases within the district. Each of the judges was empowered to transfer in his discretion any civil case before him to the other section. See the Compilation of 1911, sec. 1155.

In 1921 the act to be specially construed in this case was passed. We consider it well to transcribe it in full. It is Act No. 41, Acts of 1921, p. 286, and reads as follows:

"AN ACT

"To abolish the District Court for the Judicial District of San Juan as at present organized; to create two district courts for the Judicial District of San Juan; to define the jurisdiction of the judges of said courts, and for other purposes.

"*Be it enacted by the Legislature of Porto Rico:*

"Section 1.—That from and after July 1, 1921 the district court for the judicial district of San Juan as at present organized shall be abolished.

"Section 2.—That from and after July 1, 1921 there is hereby created a district court for the judicial district of San Juan, *first district,* and another district court for the judicial district of San Juan, *second district.* These courts shall have all such exclusive, appellate and extraordinary jurisdiction as the other district courts of Porto Rico at present possess.

"Section 3.—In accordance with the foregoing provisions the district court of San Juan, *first district,* shall take cognizance of all civil and criminal matters originating in San Juan, Comerío, Toa Alta, Toa Baja, Dorado, Corozal, Naranjito, Vega Alta and Vega Baja. And the district court of San Juan, *second district,* shall take cognizance of all civil and criminal matters originating in Río Piedras, Carolina, Loíza, Trujillo Alto, Guaynabo, Bayamón and Río Grande.

"Section 4.—With the advice and consent of the Senate the Governor shall appoint one judge, one prosecuting attorney, one secretary and one marshal for each of the San Juan district courts, and said officers shall hold office for four years; *Provided,* That section one of the district court of San Juan, as at present organized, shall be the district court of San Juan, *first district,* and that section two of the district court of San Juan shall be the district court of San Juan, *second district,* with the respective jurisdiction above stated.

And the judges and other officers of said sections shall continue to perform the duties of the offices of like category hereby created, until the expiration of the term for which they were appointed. The other subordinate officers shall be appointed in accordance with the provisions of the laws in force.

"Section 5.—*Transitory Provision.*—Matters pending in either of the sections of the district court as at present organized, when this Act takes effect, shall be decided by the judge now having cognizance thereof, provided they have reached the stage where evidence is introduced or are awaiting decision. In any other case they shall be transferred from the section were they now are to the corresponding court hereby created, on motion of a party or of the judge himself.

"Section 6.—That all laws or parts of laws in conflict herewith are hereby repealed.

"Section 7.—That an emergency is hereby declared to exist for the immediate taking effect of this Act, and, therefore, it shall take effect July 1, 1921.

"*Approved, June 30, 1921.*"

The court has repeatedly heard argument in different civil and criminal cases and in extraordinary proceedings regarding the construction that should be placed upon the said act. All seem to agree that it is obscure and difficult to apply. The trial judge in this case begins his opinion by saying that "Act No. 41 of 1921 is not perfectly clear in its terms and is susceptible of different interpretations." We have read the act carefully as a whole and in our opinion the idea of the Legislature stands out with sufficient lucidity.

Let us examine its title. It discloses that the purpose of the Legislature was: First, *to abolish* the District Court for the Judicial District of San Juan in the form in which it then existed; second, *to create two district courts for the Judicial District of San Juan;* third, to define *the jurisdiction* of the judges of the two courts; fourth, other purposes.

The judicial district of San Juan is left as it was and within it are created, instead of the existing one district

court, two independent district courts whose jurisdiction is defined. That is the logical deduction from the title.

Section 1 of the Act is positive as to the abolition of the District Court of San Juan in the form in which it was organized, *i. e.*, divided into two sections in accordance with the acts cited.

Section 2 creates the two courts referred to in the title within the judicial district of San Juan and each one of them is given all such *exclusive, appellate and extraordinary jurisdiction as the other district courts of Porto Rico at present possess*. They are complete courts, exactly equal to the others, and intended to function with their juries independently in the manner prescribed by the Act.

Section 3 determines the territorial jurisdiction of each court, specifying the names of the municipalities included in each and assigning the city of San Juan to the First District Court.

Section 4 could and should have been clearer. The part referring to the appointment of the officers presents no difficulty. What is important for the purpose of determining the seat or capital of each court is the proviso included therein. It reads as follows:

"*Provided*, That section one of the district court of San Juan, as at present organized, shall be the district court of San Juan, *first district*, and that section two of the district court of San Juan shall be the district court of San Juan, *second district*, with the respective jurisdiction above stated."

The purpose of that proviso can be no other than to determine that the seat or permanent location of the First District Court should be that of section one of the abolished court and that the seat of the Second District Court should be that of section two of the abolished court. And that this was the intention of the Legislature is plainly shown from the title of the Act and the preceding sections. The Act abolished the District Court of San Juan as it was constituted,

but not the judicial district of San Juan, the capital of which, according to other laws in force, is the city of San Juan. The district as such is preserved and the real purpose of that is to preserve its capital. The whole proviso would be unnecessary, superfluous and purposeless if it had not been intended to fix the seat of the two newly created courts in the same place where the former two sections were located.

This construction of the law is congruous with the name given to the two courts by the Legislature; with the fact that the Legislature made no appropriation for the installation of the new courts in another place, and with the fact that it designated certain employees as common to both courts, all of which facts, although not of themselves sufficient to fix the seat of the Second District Court for the Judicial District of San Juan in the city of San Juan, give color and force to that conclusion.

It is certainly unusual that a court should be located without the limits of its territorial jurisdiction, but the Legislature had this power and when it is exercised to establish the seat of the court outside of its particular territory, but within the judicial district to which it belongs and at the same place where for many years litigants and witnesses have been accustomed to appear, a few kilometers distant and at the place of the residence of most of the attorneys who practice before it, that determination seems to be more logical than strange. On this point see the opinion of this court in case No. 1902, *People* v. *Rivera, post,* page 520.

Now, from the fact that the Second District Court lawfully sits in San Juan, does it follow that the said court has concurrent jurisdiction with the First District Court in all cases originating in the city of San Juan? In our opinion that inference can not be drawn in the face of the express action of the Legislature assigning the city of San Juan to the First District Court.

The transitory provision contained in section 5 is of great importance in deciding the question of a transfer, because it determines the minds of the legislators on that point. It is therein provided that pending matters which had reached the stage where evidence was introduced or judgment was pending should be decided by the judge then having cognizance thereof, but that in *any other case they should be transferred* from the section where they were to the *corresponding court* created by the Act, at the instance of a party or of the judge.

What is meant by the corresponding court? The Act conferred upon each of the two courts created equal jurisdiction with the other district courts of the Island and thereafter prescribed that, subject to such jurisdiction, each court should take cognizance of *all civil and criminal matters originating in certain municipalities* of the district. This being the case and the Legislature not having prescribed special rules for transferring cases, it is clear that the intention was that the general rules prescribed by law for the district courts throughout the Island should apply. It is impossible to give to the word "originating" used in section 3 of the Act the restricted meaning that it has, for example, in section 79 (Code of Civil Procedure). When a transfer is moved for under that statute it must be construed in accordance with the jurisprudence that determines its scope. In our opinion the words of section 3 of the Act, "shall take cognizance of all civil and criminal matters originating * * *," when applied to the two district courts for the judicial district of San Juan, mean the same as if they were intended as an explanation of what are the civil and criminal matters of which any other district court in the Island should take cognizance.

And if this is so as to cases already docketed when the law went into effect, more especially should the same prin-

ciples govern the jurisdiction and transfer of civil and criminal cases instituted thereafter.

It is contended that if Act No. 41 is given this construction it would be unconstitutional for the reason that then the Legislature would have amended the Act of 1904 in a manner contrary to the provisions of subdivision 9 of section 34 of the Jones Act, which reads as follows:

"No law shall be revived, or amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length."

We are not of that opinion. We have already said that the judicial district of San Juan remains as it was, at least as to its capital, which continues to be the city of San Juan. It is clear that Act No. 41 of 1921 does modify in a manner the Act of 1904, but the real spirit of the provision of the Organic Act cited was complied with. Nobody need be deceived in regard to the provisions of Act No. 41. What Congress intended to avert was amendments by implication, hidden designs, deception of the whole or a majority of the legislative body by a member or group of members. Here there was nothing of that kind.

There is abundant jurisprudence on the question. In the brief filed by the Attorney General on May 8 there are numerous citations. We will refer only to the case of *People v. Mahaney,* 13 Mich. 481. The opinion therein was written by Judge Cooley and is very full. Section 25 of article 4 of the State Constitution contained a provision similar to that of section 34 of our Organic Act and the court said at page 496:

"If, whenever a new statute is passed, it is necessary that all prior statutes modified by it by implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the state would require to be republished at every session, and parts of it several times over, until, from mere immen-

sity of material, it would be impossible to tell what the law was.
\*   \*   \*

"This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent."

At the hearing on the certiorari proceedings the relators in the *quo warranto* proceedings offered in evidence a certificate of the Secretary of the Senate referring to the proceedings that took place in the Legislative Assembly in connection with the enactment of Act No. 41 of 1921 and the certificate was admitted for what value it might have. The purpose of the relators was to show that Act No. 41 is unconstitutional because it was in violation of the provisions of subdivision 5 and 6 of section 34 of the Organic Act of Porto Rico.

We have repeatedly held, and such has been our constant practice, that in certiorari proceedings we will only consider the record as it was before the court below when the petition was filed. See our decision in *People* v. *Rivera Zayas, District Judge,* 29 P. R. R. 423. For this reason we could ignore the question.

It is maintained, however, that inasmuch as the courts can take judicial notice of the proceedings of the Legislature, it can not be said that this was a new question of

which the district court had no knowledge. Courts have notice of the laws enacted. Of this there is no doubt. As to whether or not they have notice of the proceedings, the authorities are in conflict. We think the wisest view is that which maintains the negative and that the said proceedings must be proved, as was attempted in this case, by certified copies of the journals or minutes of the Legislature. See Wigmore on Evidence, Sec. 2577.

At all events, considering the documents presented, we must conclude that there was no infringment of section 34 of the Organic Act as alleged.

The pertinent part of said section 34 reads as follows:

"No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either house as to change its original purpose. * * * No bill, except the general appropriation bill for the expenses of the Government only, introduced in either house of the Legislature after the first forty days of the session, shall become a law."

In his work on Constitutional Limitations, 6th edition, page 166, note 3, Cooley, in picturesque style, makes reference to the origin and spirit of similar provisions contained in many of the State Constitutions. He says:

"A practice has sprung up of evading these constitutional provisions by introducing a new bill after the time has expired when it may constitutionally be done, as an amendment to some pending bill, the whole of which, except the enacting clause, is struck out to make way for it. Thus, the member who thinks he may possibly have occasion for the introduction of a new bill after the constitutional period has expired, takes care to introduce sham bills in due season which he can use as stocks to graft upon, and which he uses irrespective of their character or contents. The sham bill is perhaps a bill to incorporate the city of Siam. One of the member's constituents applies to him for legislative permission to construct a dam across the Wild Cat River. Forthwith, by amendment, the bill entitled a bill to incorporate the city of Siam has all after the enacting clause stricken out, and it is made to provide, as its sole object, that John Doe may construct a dam across the Wild Cat.

With this title and in this form it is passed; but the house then considerately amends the title to correspond with the purpose of the bill, and the law is passed.''

In this case a bill was presented providing the District Court for the Judicial District of San Juan with three judges and finally, after several amendments and conferences, Act No. 41 was passed. Was the Act finally passed so different from the original bill as to justify the conclusion that the primitive purpose was altered? In our opinion the question must be answered in the negative. The purpose of the original bill and that of the law enacted are the same, that is, to organize in the most efficient manner the dispatch of judicial matters in the District of San Juan. The framer of the bill thought that the solution was to provide the court with three judges instead of two. The law was finally enacted on the basis that the existing two judges would be sufficient, if the municipalities of the district were distributed between them in a definite manner and if each of the judges was given general jurisdiction of all matters like other district judges throughout the Island, the capital to be preserved in the most appropriate central place.

The Attorney General cites in his brief a case somewhat similar to this. That is the case of *Toll* v. *Jerome,* 101 Mich. 469, in which the Supreme Court expressed itself as follows:

"It appears that the bill as originally introduced in the Senate was entitled 'A bill to vacate the sixteenth judicial circuit, and to reorganize the thirty-first judicial circuit.' This bill was read the first and second times by its title, and was laid on the table. This action was taken within the first fifty days of the session. On May 18, after the first fifty days of the session had expired, the bill was taken from the table, and referred to the committee on judiciary. On May 23 the committee reported the bill back to the Senate, recommending the adoption of a substitute therefor, entitled—

" 'A bill to require the judge of the sixteenth judicial circuit to hold the terms of court of the thirty-first judicial circuit in cer-

tain cases, and also to require the judge of the thirty-first judicial circuit to hold the terms of the sixteenth judicial circuit when the resident judge may be disqualified from acting on the trial, or whenever the expedition of the business of either of said circuits may necessitate additional assistance.'

"We think the first objection urged against this act should not prevail. This court has repeatedly held that a substitute is not a new bill, and that such substitute may be offered after the lapse of the first fifty days of the session, if it is germane to the subject covered by the first bill. The general purpose of the original bill was to provide for the holding of courts in the territory covered by the sixteenth and thirty-first judicial circuits. This is plainly evident from the title. The substitute provided other means for the transaction of the business, but still related to the same subject-matter. See *Pack* v. *Barton,* 47 Mich. 520; *Attorney General* v. *Amos,* 60 Id. 372; *Attorney General* v. *Rice,* 64 Id. 385; *Hart* v. *McElroy,* 72 Id. 446. Neither the case of *Sackrider* v. *Board of Supervisors,* 79 Mich. 59, nor *Attorney General* v. *Plank Road Co.,* 97 Id. 589, is in conflict with the earlier decisions. In *Sackrider* v. *Board of Supervisors* the bill which was offered as a substitute related to a subject in no way germane to that covered by the original bill, which was true also of the case of *Attorney General* v. *Plank Road Co.*" *Toll* v. *Jerome,* 101 Mich. 468, 470–71.

Having reached the foregoing conclusions, the decision of the question of transfer is simple. Each of the respondents relied on the fact that his residence is in San Juan and in accordance with section 81 of the Code of Civil Procedure and the jurisprudence, their right should have been immediately recognized. With regard to the nature, origin and existence of the right to a transfer in general, see 40 Cyc. 116.

Therefore, the order refusing to transfer the cases must be set aside and substituted by another sustaining the motion, and the original record will be remanded with copies of the judgments that will be entered and of this opinion on which they will be based, for proper compliance with the decision of this court.

*Orders set aside.*

Justices Aldrey and Franco Soto concurred.

Justices Wolf and Hutchison concurred in the judgment.

### CONCURRING OPINION OF MR. JUSTICE WOLF.

I am of the opinion that two separate and distinct districts were created, for the reasons as set forth in the case of *Ex parte Rivera*, No. 77, in which a writ of habeas corpus was presented to me. It seems to me that, despite the reasoning of the court, its conclusion is in accord with my opinion. The Code of Civil Procedure contemplates a change of venue from one district to another district, not from one district court to another district court. This practice of transferring cases as between the two sections of the San Juan District Courts was, except for pending cases, definitely abolished by the law under discussion. A change of venue in general as well as in the Code of Civil Procedure means a transfer to the proper district.