TORO Y LIPPITT, PETICIONARIOS, *v.* LA CORTE DE DISTRITO DE SAN JUAN, SEGUNDO DISTRITO, HON. MANUEL RODRÍGUEZ SERRA, JUEZ, DEMANDADO.

SOLICITUD para que se expidan autos de *certiorari* contra la Corte de Distrito de San Juan, Segundo Distrito.

Nos. 349 y 350.—Resueltos en mayo 22, 1922.

DISTRITO JUDICIAL DE SAN JUAN—CORTE DE DISTRITO DE SAN JUAN, PRIMER DISTRITO—CORTE DE DISTRITO DE SAN JUAN, SEGUNDO DISTRITO.—La Ley 41 de 1921 dejó subsistente el Distrito Judicial de San Juan creando dentro de él, en lugar de la corte, con dos secciones, que existía, dos cortes llamadas a funcionar con sus jurados, independientemente, pero ambas con su capitalidad en la ciudad de San Juan.

ID.—COMPETENCIA DE LAS CORTES DE DISTRITO DE SAN JUAN.—Habiendo asignado la ley a cada una de las cortes creadas determinados pueblos del distrito, el territorio especial de cada corte comprende dichos pueblos, y habiendo sido asignada expresamente la ciudad de San Juan a la Corte de Distrito de San Juan, Primer Distrito, dicha ciudad es igual a cualquiera de los otros pueblos, sin que influya el hecho de que se asiente en ella también la Corte de Distrito de San Juan, Segundo Distrito, para considerarla comprendida dentro del territorio especial del Segundo Distrito.

ID.—TRASLADO—RESIDENCIA DE LOS DEMANDADOS.—Son aplicables a las dos Cortes de Distrito del Distrito Judicial de San Juan creadas por la Ley No. 41 de 1921, las reglas generales contenidas en el Código de Enjuiciamiento Civil en cuanto al lugar para la celebración de los juicios. Siendo esto así y habiendo invocado los demandados en cierto procedimiento de *quo warranto* contra ellos seguido en la Corte de Distrito de San Juan, Segundo Distrito, su residencia en San Juan, para solicitar el traslado del pleito a la Corte de

Distrito de San Juan, Primer Distrito, su petición debió ser declarada con lugar de acuerdo con lo dispuesto en el artículo 81 del dicho Código de Enjuiciamiento Civil.

ID.—CONSTITUCIONALIDAD DE LA LEY NO. 41 DE 1921.—Examinada la Ley No. 41 de 1921, en relación con lo dispuesto en la sección 34, párrafos 5, 6 y 9 del Acta Orgánica de Puerto Rico, se concluyó que no era contraria a dichas disposiciones.

Los hechos están expresados en la opinión.

Abogados de los peticionarios: *Sres. J. A. Loret, R. H. Todd, Jr., y J. Tous Soto.*

Abogados del demandado: *Sres. R. Rivera Zayas, M. Guerra y F. Soto Gras.*

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del tribunal.

El Pueblo de Puerto Rico a requerimiento de Antonio R. Barceló, Cayetano Coll y Cuchí y Manuel Camuñas presentó en la Corte de Distrito de San Juan, Segundo Distrito, una querella en solicitud de un auto de *quo warranto* dirigido contra Carlos Toro Labarthe para que se allanara a lo pedido por los relatores o justificara en virtud de qué autoridad estaba desempeñando el cargo de Comisionado de Agricultura y Trabajo de Puerto Rico, resolviéndose en definitiva que el demandado no tiene derecho a desempeñar dicho cargo y que el relator Manuel Camuñas es el funcionario *de jure* y legítimo y verdadero Comisionado.

Otro procedimiento igual fué iniciado por el Pueblo a requerimiento de Antonio R. Barceló, Cayetano Coll y Cuchí y Alejandro Ruiz Soler, contra W. F. Lippitt, actual ocupante del puesto de Comisionado de Sanidad de Puerto Rico.

El auto fué expedido y los demandados solicitaron en forma debida el traslado de cada caso a la Corte de Distrito de San Juan, Primer Distrito, por dos motivos, siendo el primero que dicha corte era la de la residencia de los demandados.

Las mociones fueron argumentadas por las partes y la corte las declaró finalmente sin lugar por entender que tenía jurisdicción concurrente con la Corte de Distrito de San Juan,

Primer Distrito, sobre el territorio de la ciudad de San Juan. El juez sentenciador emitió una amplia opinión de la cual transcribimos, a los efectos de fijar su criterio con toda precisión, el párrafo que sigue:

"En resumen: esta corte es la continuación de la antigua Sección Segunda de la del Distrito de San Juan. Su capitalidad, su jurisdicción, sus poderes, estaban anteriormente determinados; la nueva ley ha variado el nombre, y ha modificado la jurisdicción, en cuanto concierne a ciertos pueblos del distrito; pero ni en forma expresa, ni implícita, ha alterado la jurisdicción que la Sección Segunda tenía, y esta corte ahora tiene, sobre la ciudad de San Juan. Por esto no es posible acceder a lo solicitado en las mociones de referencia."

Así las cosas, Carlos Toro Labarthe y W. F. Lippitt archivaron en esta Corte Suprema solicitudes de *certiorari* alegando que si bien era apelable la resolución negando el traslado, el recurso de apelación no sería todo lo rápido que era necesario para que resultara eficaz. En efecto la apelación en un caso de traslado no suspende la tramitación del asunto, y tratándose además de un recurso de *quo warranto* si la corte de distrito declaraba al demandado culpable de usurpación, intromisión o ilegal desempeño del cargo que se ha indicado, su sentencia podría ejecutarse no obstante la apelación que pudiera establecerse contra ella. Véase el artículo 298 del Código de Enjuiciamiento Civil.

El auto de *certiorari* fué expedido. Los procedimiento originales se remitieron y están ante nosotros. Todas las partes interesadas han sido oídas por escrito y oralmente. Y así estamos en condiciones de resolver en toda su extensión las cuestiones planteadas.

Al reorganizarse los tribunales de justicia de esta Isla en 1904, la Legislatura dividió el Territorio de Puerto Rico en siete distritos judiciales, siendo el primero de ellos el Distrito de San Juan con su capital en la ciudad de San Juan, comprendiendo los Municipios de Bayamón, Carolina, Río

Grande, Río Piedras, Toa Alta, Vega Baja, Comerío, Naranjito, Dorado, Corozal, Trujillo Alto, Loíza y San Juan. Los tribunales de distrito colegiados fueron abolidos y se asignó un sólo juez para cada una de las cortes de distrito que habían de actuar en cada uno de los siete distritos judiciales. Véanse las Leyes de 1904, pág. 93 y las de 1905, pág. 179.

Muy pronto se observó que el trabajo que pesaba sobre la Corte de Distrito de San Juan era excesivo y la Legislatura en 1906 pasó una ley para dotarla de dos jueces. Dicha ley contiene catorce secciones. Por la primera se dispone que la Corte de Distrito del Distrito Judicial de San Juan se compondrá de dos jueces y se dividirá en dos secciones, que se denominarán Sección Primera y Sección Segunda, teniendo cada juez las facultades y competencia que más adelante se expresan. Por la segunda se establece que el juez de la Sección Primera tendrá la jurisdicción conferida por la ley a las cortes de distrito y a los jueces de ellas, con excepción de los asuntos que se reservaban a la Sección Segunda. Y por la tercera se prescribe que el juez de la Sección Segunda tendrá jurisdicción en todas las causas criminales, en los litigios seguidos por El Pueblo de Puerto Rico para hacer efectivas multas y confiscaciones dentro del distrito y en los pleitos civiles iniciados por el mismo con excepción de aquellos que tienen 'por objeto recuperar bienes inmuebles de otro distrito, siendo además de su competencia las apelaciones establecidas en causas criminales procedentes de las cortes municipales y de paz que funcionaran en el distrito. Véanse las Leyes de 1906, pág. 93.

Al año siguiente, 1907, la Legislatura pasó otra ley que estuvo en vigor hasta 1921 definiendo la jurisdicción de cada una de las secciones de la Corte de Distrito del Distrito Judicial de San Juan. Por ella se dispuso que ambas secciones tendrían y ejercerían jurisdicción coexistente entre sí dentro de los límites del Distrito Judicial de San Juan, en todos los asuntos civiles y que la Sección Segunda tendría jurisdicción

original y de apelación en todos los asuntos criminales del distrito. Se confirió a ambos jueces el poder de transferir a su arbitrio cualquier asunto civil de que estuvieren conociendo, de una Sección a otra. Véase la Compilación de 1911, pág. 263.

En 1921 se aprobó la ley que debemos interpretar especialmente en este caso. Creemos conveniente transcribirla íntegra. Dice así:

"Ley para abolir la Corte de Distrito del Distrito Judicial de San Juan en la forma en que existe en la actualidad; crear dos cortes de distrito del Distrito Judicial de San Juan; definir la jurisdicción de sus jueces, y para otros fines.

"*Decrétase por la Asamblea Legislativa de Puerto Rico:*

"Sección 1.—A partir del primero de julio de 1921, queda abolida la Corte de Distrito del Distrito Judicial de San Juan, en la forma en que está actualmente constituida.

"Sección 2.—Por la presente se crea, a partir del primero de julio de 1921, una Corte de Distrito del Distrito Judicial de San Juan, Primer Distrito; y otra Corte de Distrito del Distrito Judicial de San Juan, Segundo Distrito. Estas cortes tendrán toda la jurisdicción exclusiva, de apelación y extraordinaria, que en la actualidad tienen las demás cortes de distrito de Puerto Rico.

"Sección 3.—Según lo establecido anteriormente, la Corte de Distrito de San Juan, Primer Distrito, conocerá de todos los asuntos civiles y criminales que se originen en San Juan, Comerío, Toa Alta, Toa Baja, Dorado, Corozal, Naranjito, Vega Alta y Vega Baja. Y la Corte de Distrito de San Juan, Segundo Distrito, de los asuntos civiles y criminales que se originen en Río Piedras, Carolina, Loíza, Trujillo Alto, Guaynabo, Bayamón y Río Grande.

"Sección 4.—El Gobernador, con el consejo y consentimiento del Senado, nombrará un juez, un fiscal, un secretario y un marshal para cada una de las cortes de distrito de San Juan, quienes desempeñarán sus cargos por cuatro años; *Disponiéndose,* que la Sección Primera de la Corte de Distrito de San Juan, tal y como está actualmente constituida, formará la Corte de Distrito del Primer Distrito de San Juan; y la Sección Segunda de la Corte de Distrito de San Juan, formará la Corte del Segundo Distrito de San Juan, con

las jurisdicciones respectivas arriba expresadas. Y los jueces y demás funcionarios de dichas secciones continuarán ejerciendo las funciones de los cargos de igual categoría creados por esta Ley hasta el vencimiento del término para que fueron nombrados. Los demás funcionarios subalternos serán nombrados de acuerdo con las prescripciones de las leyes vigentes.

"Sección 5.—*Disposición transitoria.*—Los asuntos pendientes en cualquiera de las Secciones de la Corte de Distrito, tal como está actualmente constituida, al entrar en vigor esta Ley, deberán ser resueltos por el juez que actualmente conozca de los mismos, si hubieren entrado en el período de prueba o estuvieren pendientes de sentencia; en cualquier otro caso serán trasladados de la Sección en que ahora se encuentren a la corte correspondiente creada por esta Ley, a moción de parte o del propio juez.

"Sección 6.—Toda ley o parte de ley que se oponga a la presente, queda por ésta derogada.

"Sección 7.—Por la presente se declara que existe una emergencia para la inmediata vigencia de esta Ley, y por tanto comenzará a regir el día primero de julio de 1921.

"*Aprobada el 30 de junio de 1921.*"

Repetidas veces en diversos casos, en asuntos civiles, en causas criminales y en recursos extraordinarios se ha informado al tribunal en relación con la interpretación que debe darse a la ley que antecede. Todos parecen convenir en que es obscura y de difícil aplicación. El mismo juez sentenciador en este asunto comienza su opinión diciendo que "La Ley No. 41 de 1921, no es una ley perfectamente clara en sus expresiones; da lugar a que se la interprete de modos distintos." Hemos leído cuidadosamente dicha ley, ella sola, en su integridad, y a nuestro juicio el pensamiento de la Legislatura surge con bastante claridad.

Examinemos su título. A virtud de él se observa que el propósito del legislador fué: primero, *abolir la Corte* de Distrito del Distrito Judicial de San Juan en la forma en que existía, segundo, *crear dos Cortes de Distrito del Distrito* Judicial de San Juan, tercero, definir *la jurisdicción* de los jueces de las dos cortes, cuarto, otros fines.

El Distrito Judicial de San Juan se deja subsistente y dentro de él se crean dos cortes de distritos independientes en lugar de la única corte de distrito que existía, definiéndose la jurisdicción de sus jueces. Esa es la deducción lógica del título.

La sección primera de la ley es terminante en cuanto a la abolición de la Corte de Distrito de San Juan en la forma en que estaba constituida, esto es, funcionando por medio de sus dos Secciones, de acuerdo con las leyes que dejamos citadas.

Por la sección segunda se crean las dos cortes de que habla el título dentro del Distrito Judicial de San Juan, y se otorga a cada una de las dos cortes creadas la *jurisdicción exclusiva, de apelación y extraordinaria, que tienen las demás cortes de distrito de la Isla.* Son cortes completas, exactamente iguales a las demás, llamadas a funcionar con sus jurados, independientemente, en la forma que la misma ley prescribe.

La sección tercera determina la jurisdicción territorial de cada corte, expresando los pueblos por sus nombres, asignándose la ciudad de San Juan a la Corte de Distrito, Primer Distrito.

La sección cuarta es la que en realidad de verdad pudo y debió ser más clara. La parte relativa al nombramiento de los funcionarios no ofrece dificultad. Lo importante a los efectos de fijar el asiento o capitalidad de ambas cortes es el *disponiéndose* incluído en ella. Dice así: *"Disponiéndose, que la Sección Primera de la Corte de Distrito de San Juan, tal y como está actualmente constituída, formará la Corte de Distrito del Primer Distrito de San Juan; y la Sección Segunda de la Corte de Distrito de San Juan, formará la Corte del Segundo Distrito de San Juan, con las jurisdicciones respectivas arriba expresadas."*

Este *disponiéndose* no puede tener otro propósito que fijar el asiento, el sitio de reunión permanente de la Corte

del Primer Distrito donde estaba la Sección Primera de la corte abolida y el de la Corte del Segundo Distrito donde estaba la Sección Segunda de la dicha corte abolida. Y que ese es el pensamiento del legislador, se deduce claramente del título de la ley y de las secciones que anteceden. Por la ley queda abolida la Corte de Distrito de San Juan en la forma en que estaba constituida, pero no el Distrito Judicial de San Juan, que de acuerdo con las otras leyes vigentes tiene su capitalidad en la ciudad de San Juan. El distrito, como tal, se preserva y el verdadero objeto de ello es preservar su capitalidad. Todo el *disponiéndose* sería innecesario, estaría de más, carecería de objeto, si no hubiera sido intentado para determinar el asiento de las dos cortes de nueva creación en el mismo sitio en que funcionaban las dos antiguas secciones.

Esta interpretación de la ley es congruente con el nombre dado por el propio legislador a ambas cortes, con el hecho de no haber el legislador asignado cantidad alguna para la instauración de la nueva corte en otro sitio y con el de haber designado ciertos empleados comunes a ambas cortes, circunstancias todas que si bien por sí solas no serían bastantes para fijar el asiento de la Corte del Distrito Judicial de San Juan, Segundo Distrito, en la ciudad de San Juan, dan fuerza y color a la conclusión indicada.

Es cierto que no es lo usual que la capitalidad de una corte se sitúe fuera de los pueblos sobre los cuales se le otorgue jurisdicción, pero la legislatura pudo hacerlo, y cuando tal poder se ejerce para establecer el asiento de la corte si bien fuera de su territorio especial, dentro del distrito judicial a que la corte pertenece, en el mismo sitio donde partes y testigos por muchos años estaban acostumbrados a comparecer, a unos pocos kilómetros de distancia y donde usualmente reside la mayoría de los abogados que gestionan y defienden los asuntos, en vez de extraña parece lógica la determinación adoptada. Véase sobre este extremo la opinión de

esta corte en el caso No. 1902, *El Pueblo* v. *Rivera,* decidido en el día de hoy, (pág. 563.)

Ahora bien, del hecho que la corte del segundo distrito se asiente debidamente en San Juan ¿puede deducirse la jurisdicción concurrente de dicha corte con la del primer distrito en todos los casos que en la ciudad de San Juan se originen? A nuestro juicio no cabe hacer tal deducción después de la expresa disposición de la legislatura asignando la ciudad de San Juan a la corte del primer distrito.

La disposición transitoria contenida en la sección 5 es de suma importancia para resolver la cuestión de traslado, porque fija el pensamiento del legislador sobre la materia. Por ella se resuelve que los asuntos que hubieren entrado en el período de prueba o estuvieren pendientes de sentencia, *deberán ser resueltos por el juez* que actualmente conozca de ellos, pero en *cualquier otro caso serán trasladados* de la Sección en que ahora se encuentran a la *corte correspondiente* creada por esta ley, a moción de parte o del propio juez.

¿Cuál es la corte correspondiente? La ley otorgó a cada una de las dos creadas la misma jurisdicción que tienen las otras cortes de distrito que actúan en la Isla y dijo luego que con arreglo a esa jurisdicción cada corte conocería de *todos los asuntos civiles y criminales que se originaran en determinados pueblos* del distrito. Siendo esto así y no habiendo fijado el legislador reglas especiales para el traslado, se ve clara su intención de que se apliquen las generales que prescribe la ley para todas las cortes de distrito de la Isla. No es posible dar a la palabra *originen* usada en la sección tercera la significación limitada que tiene, por ejemplo, en el artículo 79. Cuando dicho artículo se invoque para solicitar el traslado, entonces procederá interpretarlo de acuerdo con la jurisprudencia que fija su alcance. A nuestro juicio las palabras de la dicha sección tercera "conocerá de todos los asuntos civiles y criminales que se originen. . . . . " tienen, aplicadas a las dos Cortes de Distrito del Distrito Judicial

de San Juan, la misma significación que si se hubiera tratado de explicar por ellas cuáles eran todos los asuntos civiles y criminales de que corresponde conocer a cualquiera otra corte de distrito de la Isla.

Y si ello es así con respecto a los casos ya archivados cuando comenzó a regir la ley, con mucha mayor razón deberán seguirse los mismos preceptos para regular la competencia y el traslado con respecto a los pleitos civiles y a las causas criminales iniciadas después.

Se sostiene que si se diera a la Ley No. 41 la interpretación que acabamos de darle, sería inconstitucional porque la legislatura habría enmendado la ley de 1904 en forma contraria a lo dispuesto en el artículo 34, párrafo 9, de la Ley Jones que dice así:

"Ninguna ley será restablecida o enmendada, ni se dará mayor alcance a sus disposiciones, ni se conferirán las facultades en ella contenidas, haciendo referencia a su título solamente, sino que toda la parte de ella que sea restablecida, enmendada, extendida o conferida será decretada nuevamente y publicada en su totalidad."

No estamos conformes. Ya hemos dicho que el Distrito Judicial de San Juan queda subsistente por lo menos a los fines de su capitalidad que permanece en la ciudad de San Juan. Claro es que la ley No. 41 de 1921 modifica en cierto modo la ley de 1904, pero el verdadero espíritu de la disposición del acta orgánica invocada, quedó cumplido. Nadie puede llamarse a engaño con respecto a las disposiciones de la ley No. 41. Lo que el Congreso quiso impedir fueron las enmiendas por implicación, los fines ocultos, el engaño de la totalidad o de la mayoría del cuerpo legislativo por algún legislador o grupo de legisladores. Aquí no pudo haber tal cosa.

La jurisprudencia es abundantísima sobre la materia. En el alegato del Attorney General archivado el 8 de mayo actual se hacen numerosas citas. Nos limitaremos a referirnos a

la del caso de *People* v. *Mahaney,* 13 Mich. 481.   La opinión está escrita por el Juez Cooley y es amplísima.   La sección 25 del artículo 4 de la Constitución del Estado contenía un precepto similar al del artículo 34 de nuestra acta orgánica y la corte dijo, página 496:

"Si siempre que se adoptara una nueva ley, fuese necesario que se decretaran y se publicaran en su totalidad, como quedan enmendadas, todas las leyes anteriores que la nueva ley modifica, entonces sería preciso publicar al tiempo de cada reunión de la legislatura una gran parte de todos los estatutos del Estado, muchos de ellos repetidas veces, hasta que debido a la inmensidad de la materia, sería imposible averiguar lo que estuviere en vigor.

" * * * Esta disposición constitucional tiene que ser interpretada de un modo razonable, con el objeto de ponerla en vigor.   El mal que se quiso remediar fué la adopción de leyes enmendatorias redactadas en términos tan obscuros que a veces engañaron a los mismos legisladores en cuanto a su significación, y el público, a causa de lo difícil que era hacer el examen y la comparación necesarios, no averiguó los cambios que se efectuaron en las leyes.   Una ley enmendatoria que se proponía solamente insertar ciertas palabras, o substituir una frase por otra, en una ley o artículo al cual solamente se refería, sin publicarlo, se prestaba bien a engañar a los descuidados, y quizás a veces se redactaban en esa forma leyes enmendatorias con ese fin.   De esta manera se produjo mucha confusión en las leyes y la Constitución sabiamente ha prohibido legislación de esta naturaleza.   Pero una ley que es completa en sí no está comprendida dentro de lo que esta disposición quiso evitar, y no se puede decir que está prohibida por esta disposición sin estar en contra de su fin manifiesto."

Mientras se celebraba la vista del *certiorari* los relatores en los casos de *quo warranto* presentaron como prueba una certificación del secretario del senado referente a los procedimientos que tuvieron lugar en la Asamblea Legislativa con motivo de la aprobación de la ley No. 41 de 1921, y la certificación fué admitida a los fines procedentes.   El propósito de los relatores era el de demostrar que la Ley No. 41 es anticonstitucional por haberse aprobado en violación de

lo dispuesto en el artículo 34, párrafos 5 y 6, del acta orgánica de Puerto Rico.

Varias veces hemos resuelto y nuestra práctica constante ha sido considerar únicamente en casos de *certiorari* los autos tales como se encontraban en la corte inferior al establecerse el recurso. Véase nuestra decisión en *El Pueblo* v. *Rivera Zayas, Juez de Distrito,* 29 D. P. R. 454. Siendo esto así, podríamos dejar de examinar esta cuestión.

Se sostiene sin embargo que como los tribunales tienen conocimiento judicial de los procedimientos de las legislaturas, no puede alegarse que se trate de una cuestión nueva de la cual no hubiera tenido conocimiento la Corte de Distrito. Los tribunales tienen conocimiento de las leyes aprobadas. Sobre esto no hay duda. En cuanto a si lo tienen o no de los procedimientos, las autoridades están en conflicto. Creemos que la opinión más sabia es la que sostiene la negativa, debiendo dichos procedimientos probarse, como se intentó en este caso, por medio de copias certificadas de los diarios o actas de la legislatura. Véase *Wigmore on Evidence,* Sec. 2577.

De todos modos examinando los documentos presentados siempre tendríamos que concluir que no existe la violación de la sección 34 del Acta Orgánica alegada.

Dicha sección 34, en lo pertinente, es como sigue:

"No se aprobará ninguna ley a no ser mediante un proyecto de ley, y ningún proyecto de ley será de tal manera alterado o enmendado al aprobarse por cualquiera de las Cámaras, que se cambie su propósito original." " * * * Ningún proyecto de ley, excepto únicamente el de presupuesto general para los gastos del Gobierno, presentado en cualquiera de las Cámaras de la Asamblea Legislativa después de los primeros cuarenta días de la Legislatura, pasará a ser ley."

Cooley en su obra sobre Limitaciones Constitucionales, pág. 166, nota 3, de la 6ª. edición, en lenguaje pintoresco ex-

presa el origen y el espíritu de dicha disposición que figura en muchas de las Constituciones de los Estados. Dice así:

"Se ha creado la costumbre de burlarse de disposiciones ·constitucionales de esta naturaleza presentando un nuevo proyecto, después del término constitucional para su presentación, como una enmienda de algún proyecto pendiente. Se borra todo el proyecto pendiente, excepto la cláusula inicial para hacer sitio al nuevo. Por ejemplo, el legislador que tiene la idea de que quizás desee presentar nuevos proyectos después de expirado el término constitucional para ello, cuidadosamente presenta simulados proyectos dentro del término legal para poder usarlos como troncos en que injertar los nuevos, y los usa así sin consideración a su carácter o a su contenido. Quizás el proyecto simulado sea uno para incorporar la ciudad de Siam. Uno de los amigos del legislador le pide que le obtenga permiso legislativo para construir un dique en el río Wild Cat. Inmediatamente, por medio de enmienda, el proyecto titulado un proyecto para incorporar la ciudad de Siam pierde todo su contenido menos la cláusula inicial y dispone que Fulano de Tal tiene permiso para construir un dique en el río Wild Cat, como su único propósito. Con aquel título y en esta forma se adopta; pero entonces la Cámara, con mucha cortesía, enmienda el título para que se ajuste al propósito, y así se adopta finalmente el proyecto."

En el presente caso se presentó un proyecto de ley para dotar de tres jueces a la Corte de Distrito del Distrito Judicial de San Juan, y, últimamente, después de enmiendas y conferencias varias, se aprobó la Ley No. 41. ¿La ley finalmente aprobada enmendó de tal manera el primitivo proyecto que pueda sostenerse que cambió su propósito original? Una respuesta negativa se impone, a nuestro juicio. El propósito del proyecto primitivo y el de la ley aprobada son el mismo, esto es, organizar el despacho de los asuntos judiciales en el Distrito de San Juan del modo más eficiente. El autor del proyecto creyó que la solución era dotar la corte de tres jueces en vez de dos. La ley finalmente se aprobó bajo la base de que los mismos dos jueces serían bastantes si se repartían los pueblos del distrito de una manera fija

entre ellos y si se confería a los jueces jurisdicción general
sobre todos los asuntos al igual que los demás jueces de dis-
trito de la Isla, conservando la capitalidad en el punto cén-
trico más apropiado.

El Attorney General cita en su alegato un caso parecido
al presente. Nos referimos al de *Toll* v. *Jerome,* 101 Mich.
469. La Corte Suprema se expresó así:

"Parece que el proyecto, tal como se presentó originalmente en
el Senado, estaba titulado 'Un proyecto para abolir el décimosexto
circuito judicial, y para reorganizar el trigésimo-primero circuito ju-
dicial.' Este proyecto fué leído por su título en primera y segunda
lectura, y quedó sobre la mesa. En mayo 18, después de transcu-
rridos los primeros cincuenta días de la sesión, el proyecto fué levan-
tado de la mesa y pasado al comité de lo judicial. En mayo 23 el
comité devolvió el proyecto al Senado, con un informe recomendando
la adopción de un sustituto al mismo, titulado:

" 'Un proyecto para ordenar al juez del décimosexto circuito ju-
dicial que presida los términos de la corte del trigésimo-primero cir-
cuito judicial en determinados casos, y también para ordenar al juez
del trigésimo-primero circuito judicial que presida los términos del
décimosexto circuito judicial cuando el juez residente esté incapa-
citado para actuar en el juicio, o cuando quiera que la urgencia
de los asuntos de cualquiera de dichos circuitos exija ayuda adi-
cional.'

"Creemos que la primera objeción presentada contra esta Ley no
debe prevalecer. Esta corte ha resuelto repetidamente que un sus-
tituto no es un proyecto nuevo, y que tal sustituto puede ser pre-
sentado después de transcurridos los primeros cincuenta días de la
sesión si tiene afinidad con la materia envuelta en el primer pro-
yecto. El propósito general del proyecto original era disponer sobre
las sesiones de las cortes en el territorio comprendido por los circui-
tos décimosexto y trigésimo-primero. Esto resulta evidente del título.
El sustituto disponía otros medios para la transacción de los asun-
tos, pero aún se refería a la misma materia. Véanse *Pack* v. *Barton,*
47 Mich. 520; *Attorney General* v. *Amos,* 60 Id. 372; *Attorney
General* v. *Rice,* 64 Id. 385; *Hart* v. *McElroy,* 72 Id. 446. Ni el
caso de *Sackrider* v. *Board of Supervisors,* 79 Mich. 59, ni el de
*Attorney General* v. *Plank Road Company,* 97 Id. 589, están en con-

flicto con las más antiguas decisiones.   En Sackrider v. Board of Supervisors el proyecto que fué ofrecido como un sustituto se refería a una materia en modo alguno afín a la envuelta en el proyecto original, lo cual fué también el hecho en el caso de *Attorney General* v. *Plank Road Company." Toll* v. *Jerome,* 101 Mich. 468, 470-71.

Habiendo llegado a las anteriores conclusiones, la resolución del traslado es sencilla.   Ambos demandados invocaron su residencia en San Juan y de acuerdo con la ley, artículo 81 del Código de Enjuiciamiento Civil, y con la jurisprudencia, su derecho debió serles inmediatamente reconocido.   Con respecto a la naturaleza, origen y existencia del derecho de traslado en general, véase 40 Cyc. 116.

En tal virtud procede anular en ambos casos la orden que negó el traslado y dictar otra declarando con lugar la petición, devolviéndose los autos originales con copia de las sentencias que se dicten y de esta opinión en que se fundan, para el debido cumplimiento de lo acordado.

*Revocadas las resoluciones apeladas negando el traslado del pleito a la Corte de Distrito de San Juan, Primer Distrito, y decretado el traslado solicitado.*

Jueces concurrentes: Sres. Asociados Aldrey y Franco Soto.

Los Jueces Asociados Sres. Wolf y Hutchison firmaron "Conforme con la sentencia."

OPINIÓN CONCURRENTE DEL JUEZ ASOCIADO SEÑOR WOLF.

Soy de opinión de que fueron establecidos dos distritos separados y distintos por las razones expresadas en el caso *Ex parte Tomás Rivera,* No. 77, en el cual se me presentó una solicitud para un auto de *habeas corpus.*   Me parece que a·pesar del razonamiento de la corte su conclusión está de

acuerdo con mi opinión.   El Código de Enjuiciamiento Civil tiene por fin un cambio del lugar del juicio de un distrito a otro, no de una corte de distrito a otra corte de distrito.   Esta práctica de trasladar casos como entre las dos secciones de las Cortes de Distrito de San Juan quedó, excepto para los casos pendientes, definitivamente abolida por la ley que se discute.   Un cambio del lugar del juicio en general así como en el Código de Enjuiciamiento Civil significa un traslado al debido distrito.